James W. MAGERS, Appellant,

v.

Janice M. DURHAM, Appellee.

No. 2-84-248-CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 20, 1986.

Crampton, Crampton & Estrada and Holly Crampton, Wichita Falls, for appellant.

Law Office of Perry Wesbrooks and Perry Wesbrooks, Wichita Falls, for appellee.

Before BURDOCK and FARRIS, JJ., and HUGHES, Senior Justice (Retired, Sitting by Assignment).

## OPINION

HUGHES, Senior Justice (Retired, Sitting by Assignment).

James W. Magers has appealed the judgment of the trial court which denied his motion to modify conservatorship of his two minor children. The judgment was based on the jury verdict in which the jury found in special issue one that circumstances had not so materially and substantially changed that keeping appellee as managing conservator would be injurious to Stephanie. Special issue two made the same finding with respect to Chris. Special issue three recommended continuous home visitation for at least two years.

We affirm.

Appellant and appellee have two children: Christopher, born November 16, 1974 and Stephanie, born February 21, 1978. On April 7, 1980, appellant filed for divorce. During the pendency of the divorce, appellant said he learned appellee's boyfriend, Tommy Durham, picked Chris up by the head. Appellant said he complained to his wife about this and thought he had the problem solved. A decree of divorce was entered on June 11, 1980. By agreement of the parties appellee was appointed managing conservator while appellant was named possessory conservator.

After the divorce was entered, Durham moved in with appellee. They were later married on August 25, 1980, and the children went to visit their paternal grandmother in Oklahoma. The children remained in Oklahoma for most of the summer. During his stay with his grandmother, Chris told her Durham had picked him up by his ears and neck, taped his mouth shut and then ripped the tape off and tied him up. Subsequently Chris was taken to a child psychiatrist. Chris told the psychiatrist the same things he had told his grandmother. In addition, he told him Durham had fondled him and made Chris touch tongues with him. After talking to Chris the psychiatrist concluded that the child had been sexually abused.

As a result of these conversations, appellant, who had moved to Oklahoma, petitioned the Oklahoma courts and obtained an ex parte protective order. The order placed the children with appellant and enjoined appellee from removing the children from Oklahoma. By such procedure appellant retained the children in Oklahoma outside the possession of appellee for a period of two years until the Oklahoma Court of Appeals ordered appellant to return the children and to proceed with his custody complaint in Texas. At trial in Texas, appellee and Durham denied that any sexual abuse had occurred. In addition, in a videotaped interview with a member of the Family Court Services of Wichita County, Chris denied that anyone had abused him sexually or touched him.

Point of error one asserts that the jury's verdict on special issues one and two as herein above mentioned are so against the great weight and preponderance of the evidence as to be manifestly unjust. In this connection, the appellant urges that the answer to special issue three, wherein the jury recommended continuous home visitation for at least two years, indicated that the jury thought the children were in danger. There is no question but that the testimony adduced in the hearings in Oklahoma concerning the lifting of the boy Chris by his head and ears, the tongue touching, the lipstick on the genitalia, the tape applied to Chris, the version of the boy being hung on a hook, and the dress lifting and panty dropping of the little girl in connection with picture taking, is testimony to give a trier of fact pause. However, in the reams of testimony that have been examined by us, there is refutation and retraction of all of the Oklahoma testimony. The boy Chris apologized for lying and said that what he had told about the various things done to him were not true or were an incorrect interpretation of what happened. This came by way of videotape interrogation by a caseworker. The little girl in her videotape interrogation also repudiated what she had formerly said and said she could not remember. Both children in their videotapes testified that they wanted to stay with their mother and stepfather. The children further testified they were not afraid of them and had no fear of being mistreated.

We sympathize with the triers of fact in this case and know from extensive experience how the testimony in child custody cases tends to be confusing, contradicting and hard to reconcile. It goes without saying that children living with father figures and mother figures are easily swayed and influenced by the people who have charge of them and this applies whether they are living in Oklahoma or Texas or in any other state.

In this case the jury and the judge who are the judges of the facts and the law in the court below, saw and listened to the witnesses, observed their demeanor, and were in a position to make judgment as to their respective veracities.

■■■ We, the appellate court, cannot substitute our conclusions for those of the jury. *See Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796 (1951). For us to reverse the trial court the verdict arrived at has to be against the great weight and preponderance of the evidence as well as manifestly wrong and unjust. *See Burns v. Union Standard Ins. Co.*, 580 S.W.2d 650, 654 (Tex.Civ.App.—Fort Worth 1979), *aff'd on other grounds*, 593 S.W.2d 309

(Tex.1980). We must sustain the findings of fact made by the trier of fact if there is some evidence of probative value to support same and they are not against the great weight and preponderance of the evidence. *See Pickens v. Baker*, 588 S.W.2d 406, 409 (Tex.Civ.App.—Amarillo 1979, no writ). We overrule point of error one.

■ By point of error two, the appellant asserts error on the part of the trial court in allowing counsel for appellee to argue to the jury that preponderance of the evidence meant that if they had "any doubt," they should decide the case in favor of appellee. To get this point in perspective, we have to go to the part of the record that contains the objected-to testimony. In appellee's argument to the jury, the attorney for her made the following statement:

MS. CRAMPTON [APPELLANT'S ATTORNEY]: Excuse me.

MR. WESBROOKS [APPELLEE'S ATTORNEY]: Yes, ma'am?

MS. CRAMPTON: You're doing an instruction on reasonable doubt. That's not the burden.

MR. WESBROOKS: Preponderance of the evidence and that's what I said.

MS. CRAMPTON: But you instructed them of the law that—

THE COURT: The Jury will follow the charge.

MR. WESBROOKS: Well, I wasn't trying to tell you this, but in a criminal case they ask you whether any kind of—I know what she's talking about—reasonable doubt at all you have to find for the accused. That's not what we're talking about here. There can be a doubt on credibility, a doubt whether someone is telling the truth or not or whether they are mistaken or not, and if you weigh all the evidence, it's really the scale of justice. That's what we're here for is justice. Justice is what we're trying to seek. I think if you weigh the whole thing you can ask yourself did Woody carry the burden of proof....

Preponderance of the evidence was correctly defined by the attorney for appellee earlier in his argument to the jury:

If you find from the preponderance of the evidence which is the greater weight and degree of the credible testimony before you....

This was along the line of the court's charge which defined for the jury the meaning of preponderance of the evidence:

The Court has provided you with definitions as follows: "Preponderance of the Evidence" is defined as the greater weight and degree of the credible testimony or evidence introduced before you and admitted in evidence in this cause.

We have to agree with counsel for appellee that the record does not reflect any objection being made to the court concerning the complained-of argument. Actually, all that occurred was that the attorney for appellant interrupted the argument of appellee's attorney and carried on a conversation with him in which she accused him of doing an instruction on reasonable doubt. In the conversation between the two lawyers, appellee's attorney reiterated that the preponderance of the evidence standard was what he had alluded to and at this point, the court made an unsolicited statement that the jury was to follow the charge. There was then a somewhat garbled statement by the appellee's attorney in which he said this was not a criminal case where reasonable doubt is the standard. Appellee's attorney then pointed out that under the preponderance of the evidence standard, there can be a doubt on credibility-or whether someone is telling the truth, or whether or not there is a mistake and you just end up weighing all the evidence on the scale of justice. Appellee's counsel then winds up his discussion with the other counsel by saying that if you weigh the whole thing, you could ask whether or not the movant carried the burden of proof.

In addition to not making a proper objection to the court about the argument, counsel for the appellant did not request an instruction from the court to the jury to clarify the matter. The only instruction given was unsolicited from either of the attorneys. It was an admonition of the

court for the jury to follow the instructions in the charge, which properly defined preponderance of the evidence. *See Davenport v. Cabell's, Inc.,* 239 S.W.2d 833, 835 (Tex.Civ.App.—Texarkana 1951, no writ); 1 STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 1.03 (1969).

Obviously, it would have been much better had the appellee's attorney simply told the jury that if the appellant did not tip the scale with his evidence, then they would have to find for his client. It was an unfortunate choice of words for him to have brought the word "doubt" into the argument since it is the key word in another standard of proof used in criminal cases. However, viewing all of the record before and after the remark complained of, we hold that if there was error in bringing the word "doubt" before the minds of the jury, it was rectified by the other statements made reiterating that the standard of proof was by a preponderance of the evidence and by the court's admonition to the jury to follow the instruction given in its charge. If the appellant had desired a more complete instruction from the court than the one which was voluntarily given, a request should have been made for such. *See Otis Elevator Co. v. Wood,* 436 S.W.2d 324, 332 (Tex.1968); *Texas Employers' Ins. Ass'n v. Haywood,* 153 Tex. 242, 266 S.W.2d 856, 858 (1954); *Gulf, Colorado & Santa Fe Railroad Co. v. Parmer,* 389 S.W.2d 558, 565 (Tex.Civ.App.—Beaumont 1965, writ ref'd n.r.e.). We overrule point of error two.

■ In point of error three the appellant urges trial court error in failing to require the disclosure of the identity, and therefore, the communications, between the child, Chris, and a "Dr. X," in a suit affecting the parent-child relationship when such disclosure is permitted by TEX.FAM.CODE ANN. sec. 14.04 (Vernon 1975) and TEX.R. EVID. 510. In connection with this point of error, we are concerned with TEX.R. CIV.P. 166b. This is the authority upon which the appellant relies. TEX.R.CIV.P.

166b(3)(c), has to do with exemptions, the preamble to which says:

The following matters are not discoverable:

(c) the identity, mental impressions and opinions of an expert who has been informally consulted or of an expert who has been retained or specially employed by another party in anticipation of litigation or preparation for trial or any documents or tangible things containing such information if the expert will not be called as a witness, except that the identity, mental impressions and opinions of an expert who will not be called to testify and any documents or tangible things containing such impressions and opinions are discoverable if the expert's work product forms a basis either in whole or in part of the opinions of an expert who will be called as a witness; ...

The appellant relies in connection with the third point of error on TEX.R.EVID. 510.

(d) Exceptions. Exceptions to the Privilege in Court Proceedings Exist:

. . . .

(6) When the disclosure is relevant in any suit affecting the parent-child relationship;

Appellant also relies upon TEX.FAM. CODE ANN. sec. 14.04 (Vernon 1975):

Sec. 14.04. Rights, Privileges, Duties, and Powers of Possessory Conservator

. . . .

(c) A possessory conservator has the right of access to medical, dental, and educational records of the child to the same extent as the managing conservator. The custodian of records shall delete all references in the records to the place of residence of the managing conservator of the child prior to their release to the possessory conservator.

Simply stated, it is the contention of the appellee that rule 166b(3)(c) protects her from having to disclose the name and the work product of "Dr. X." It is the contention of the appellant that Dr. X was employed by her solely for the purpose of

aiding her lawyer in the preparation of the case at hand. Such was the testimony of legal counsel for appellee on the bill of exceptions (out of the presence of the jury) that the child Chris was tested by Dr. X only for the purpose of advising her counsel on the questions that legal counsel had concerning why a child would lie or not lie on a given issue so as to prepare legal counsel to do a better job of examination in the lawsuit.

The question for us to determine is whether or not section 14.04(c) of TEX. FAM.CODE ANN. overrules the provision of rule 166b(3)(c). It would appear that there is a conflict between the two provisions when one first considers them. However, we are inclined to agree with the counsel for appellee that rule 166b is unaffected by the Family Code and rule 510 of the Rules of Evidence. The exemption claimed by appellee is one that comes out of the "work product" situation. The purpose of the exemption for consultants is to allow a party to hire someone to help in the preparation of the case without having to furnish him as an expert to the opposing party. *See Werner v. Miller*, 579 S.W.2d 455, 456 (Tex.1979). In part, *Werner* states:

> One party should not be allowed to benefit unduly from the other party's diligent preparation. This would impede, not aid, discovery.

*Id.* at 456.

The purpose of section 14.04(c) is to provide that the parent who does not have permanent custody of the child still will be allowed to have some kind of a role in the matter of the child's education and health and the matter of treatment. In the case at hand, treatment was not the function of Dr. X. Dr. X's function was as a consultant and, in our opinion, entitled to be protected as such under rule 166b. Also, appellant in this case, did not make any proof that the failure to allow him to know the identity of Dr. X was harmful to him. Such proof is required under the provisions of TEX.R.APP.P. 81. *See Sneed v. H.E. Butt Grocery Co.*, 569 S.W.2d 555; 556–57

(Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). We overrule point of error three.

In point of error four, the appellant asserts error on the trial court in finding that "Janice M. Durham, is the prevailing party and should recover reasonable and necessary attorney's fees and costs of suit in this cause" and in awarding and taxing as costs attorney's fees in the amount of $23,000.00, given the facts in this case. It is within the discretion of the court to award attorney's fees and taxing of costs. *See Fambro v. Fambro*, 635 S.W.2d 945, 949 (Tex.App.—Fort Worth 1982, no writ). In this connection, we note that the trial court in its assessment of attorney's fees will not be overruled unless there is shown a clear abuse of discretion. We are not allowed to substitute our judgment for that of the trial court, but we have to determine if that court's decision was arbitrary or unreasonable. *See Landry v. Travelers Insurance Co.*, 458 S.W.2d 649, 651 (Tex. 1970).

It is true that there were other issues in litigation in the trial of the present case, but these issues were practically excluded by the very nature and manner in which the case was tried. It has to be pointed out that custody was practically the sole point of contention between the parties. In this case, the triers of the fact determined that the facts were with the appellee and accordingly, the appellee was awarded a judgment on the custody matter. One has to but go through the voluminous record in this case, as we have done, and examine the extensive amount of testimony involved not only in the case in chief, but in the preliminary matters handled by the attorneys for both sides in this case to arrive at the conclusion that the sum of $23,000.00, which was arrived at on the basis of the time spent and the basic hourly rate for this type of case, to come to the conclusion that such sum was not excessive and it was an amount well within the discretion of the trial court to assess. Finding no error in

the assessment of attorneys' fees, we overrule point of error four.

We affirm.