CV2-319 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-319-CV





JAMES C. "JIM" GREENE, D/B/A GERTRUDE'S PIZZA,



 APPELLANT


vs.





NCNB TEXAS NATIONAL BANK,



 APPELLEE


 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT



NO. 91-2795, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING



 





PER CURIAM


 James C. "Jim" Greene, d/b/a Gertrude's Pizza (Greene), appeals the trial court's
judgment notwithstanding the verdict on his claims of deceptive trade practices (1) and award of
attorney's fees to appellee NCNB Texas National Bank (the Bank). The suit arose out of a
commercial lease transaction. We will affirm the trial court's judgment.



THE CONTROVERSY


 Greene leased space in the Cedar Park Square Center (the Center) in 1986 for a
term of five and one-half years. In 1988, the lease was amended to reduce the rent and change
the term of the lease to "twenty-four months, beginning July 1, 1988 through June 30, 1990."
Soon after this lease amendment, the Bank, acting for the FDIC, took control of the property. 
Shortly before the amended lease expired, Greene talked to Roger Wiley, an employee of the
Wilkerson Company, the Bank's leasing agent, regarding the expiration of the lease. Greene told
Wiley that he wished to lease the premises for an additional one or two years at the same rent he
had been paying. Wiley told Greene that he would confer with the Bank and "get back to him."

 Meanwhile, in March 1990, Greene offered to sell the business to George Thomas
Kash, a Mr. Gatti's Pizza franchisee (Mr. Gatti's). Kash did not accept the offer. Greene also
listed his business for sale with a broker specializing in selling businesses in July 1990, but
received no offers.

 On June 25, 1990, Royce Reed, the officer in the Bank's asset management
department who was responsible for the Center, received a proposal from Kash to lease Greene's
space in Cedar Park Square. Reed did not accept the first proposal, but continued negotiating
with Mr. Gatti's until an acceptable proposal was formulated in November 1990 and approved in
January 1991. (2) During the entire period, the Bank was attempting to sell the Center.

 After June 30, 1990, Greene continued to occupy the premises, paying the same
rent he had been paying under the amended lease. By letter dated January 21, 1991, the Bank
gave Greene thirty days' written notice to vacate. Greene then sued the Bank. After several
months of paying the higher rent specified for a holdover tenant and collected by the Bank after
the notice to vacate, Greene eventually left the property in August 1991.



PROCEDURAL HISTORY


 In his petition, Greene asserted a number of claims concerning the proper
construction of the lease and amendment, and the manner in which the Bank had enforced the
lease. The court granted a partial summary judgment in the Bank's favor, declaring the lease
amendment unambiguous and holding that the lease term expired as of June 30, 1990. Trial of
Greene's remaining claims and the Bank's claim for attorney's fees followed. At the conclusion
of his evidence, Greene withdrew a number of his claims and the court granted the Bank an
instructed verdict on other claims and allegations. The trial court submitted jury questions on the
remaining claims concerning DTPA violations and attorney's fees. The trial court disregarded
the jury's affirmative answers concerning the Bank's liability under the DTPA, the Bank's
intentional conduct, Greene's damages and the attorney's fees. The court rendered judgment
notwithstanding the verdict in the Bank's favor, and awarded the Bank its attorney's fees as found
by the jury.

 On appeal, Greene brings two points of error, contending that the trial court erred
in: (1) submitting a jury question on the Bank's reasonable and necessary attorney's fees and
rendering judgment for the amount of such fees because the Bank was not entitled to recover
attorney's fees under any theory presented by its pleadings or proof; and (2) granting the Bank's
motion for judgment notwithstanding the verdict on Greene's claims because there was some
evidence upon which the jury could have made the findings the court disregarded. The Bank
brings a cross-point that the evidence presented at trial was factually insufficient to support the
jury's affirmative answer to question number one concerning false, misleading, or deceptive acts
or practices. 



Sufficiency of the Evidence


Standard of review

 A motion for judgment notwithstanding the verdict is proper only if a directed
verdict would have been proper. Tex. R. Civ. P. 301; Dodd v. Texas Farm Prods. Co., 576
S.W.2d 812, 815 (Tex. 1979). A directed verdict is proper when reasonable minds can draw only
one conclusion from the evidence. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978). To
sustain a judgment n.o.v. on appeal, the court must determine that no evidence exists upon which
the jury could have made the findings. In deciding whether there is "no evidence," we must
consider all evidence in the light most favorable to the party against whom the motion was
granted, and indulge every reasonable intendment deducible from the evidence in that party's
favor. Dodd, 576 S.W.2d at 815. Only the evidence and inferences that support the jury finding
are to be considered, and all contrary evidence and inferences should be rejected. Alm v.
Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111 S.Ct. 135 (1990);
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).



Greene's evidence

 Greene testified that, in his conversation with Wiley, he believed he was asking for
an extension of the "window" of lower rent within a lease that did not expire until June 1992. 
Greene also relies on Wiley's statement that the Bank would "get back to him," and on the Bank's
acceptance of the same rent that he had been paying under the lease. Greene acknowledges that
the Bank correctly regarded him as a holdover tenant who was seeking a new lease at his old rent,
"although they never said so." He also points out that the Bank was trying to sell the Center, and
that Mr. Gatti's had greater name recognition for prospective purchasers. Greene notes that the
negotiations with Mr. Gatti's were not disclosed to him, but were disclosed to prospective
purchasers of the Center.

 From this evidence, Greene would have us infer that the Bank's intent was to retain
him as a month-to-month tenant until the negotiations with Mr. Gatti's were either successful or
terminated, without informing him, however, of these negotiations so that he would have time to
relocate.



DTPA liability

 The question submitted to the jury was whether the Bank engaged "in any false,
misleading, or deceptive act or practice that was a producing cause of damages to Jim Greene
d/b/a Gertrude's Pizza?" The instruction submitted with the question said:



"False, misleading, or deceptive act or practice" means any of the following:


a. Representing that goods have characteristics that they do not have; or


b. Representing that goods are of a particular quality when they are of
another; or


c. Failing to disclose information about goods that was known at the time of
the transaction if such failure to disclose such information was intended to
induce the consumer into a transaction into which the consumer would not
have entered had the information been disclosed; or


d. Causing confusion or misunderstanding as the source, sponsorship,
approval, or certification of goods. (3)



 For liability to arise under definition "a" or "b," there must be evidence that the
defendant made a material representation that was false. Pennington v. Singleton, 606 S.W.2d
682, 687 (Tex. 1980). Representation has been defined as "a statement of a past or existing fact,
as distinguished from a mere opinion, judgment, probability, or expectation." HOW Ins. Co. v.
Patriot Fin. Servs., 786 S.W.2d 533, 543 (Tex. Civ. App.--Austin 1990, writ denied), rev'd on
other grounds, 843 S.W.2d 464, 469-70 (Tex. 1992). For liability to arise under definition "c,"
there must be proof that the Bank failed to disclose information with the intent to induce Greene
into the transaction and that had the information been disclosed, he would not have entered into
the transaction. See Freeman v. Greenbriar Homes, Inc., 715 S.W.2d 394, 397 (Tex. App.-Dallas 1986, writ ref'd n.r.e.). For liability to arise under definition "d," a deception regarding
the origin or endorsement of a good or service must have occurred. See Prairie Cattle Co. v.
Fletcher, 610 S.W.2d 849, 853 (Tex. Civ. App.--Amarillo 1980, writ dism'd w.o.j.). (4)

 We therefore examine the record for evidence of any of the above acts or practices. 
Greene claims no active misrepresentation as to the terms of the written lease. He complains,
however, that the Bank failed to inform him explicitly that his status as of June 30, 1990, was a
hold-over tenant on a month-to-month basis. He admits that he never informed the Bank that he
considered the lease in effect until 1992. It is not a deceptive act on the part of the Bank to expect
Greene to apprise himself of the terms of the lease. See McNeill v. McDavid Ins. Agency, 594
S.W.2d 198, 203 (Tex. Civ. App.--Fort Worth 1980, no writ)(insurance solicitor had no duty to
explain terms in application to prevent the applicant from being self-deceived); First City
Mortgage Co. v. Gillis, 694 S.W.2d 144, 146-47 (Tex. App.--Houston [14th Dist.] 1985, writ
ref'd n.r.e.)(contents of written contract not kind of information that broker had duty to disclose;
amortization and prepayment terms were clear and unambiguous and applicant's ignorance of the
refusal of his suggested changes was due to his agent's failure to adequately review the
commitment before signing; not deceptive act that applicant not specifically informed). There is
no evidence of overreaching. Greene testified that he had negotiated several commercial leases
before this, including the amendment to this lease.

 Conflicting interpretations of a contract are not in and of themselves DTPA
violations. Group Hosp. Serv., Inc. v. One & Two Brookriver Ctr., 704 S.W.2d 886, 889 (Tex.
App.--Dallas 1986, no writ). Neither are attempts to enforce a contract as written. Quitta v.
Fossati, 808 S.W.2d 636, 645 (Tex. App.--Corpus Christi 1991, writ denied)(alleged oral
modification of lease not communicated to co-owners before maker died; attempts by co-owners
to enforce lease as written, rather than tenant's version of lease with oral modifications, not
DTPA violation).

 Greene claims that the Bank's continued acceptance of the same rent he had been
paying was an act that mislead him into believing the lease was still in effect. The judge
instructed a verdict against Greene on waiver and estoppel, however. The Bank's legitimate
exercise of its rights under the lease was not deceptive.

 To show a DTPA violation, Greene relies heavily on the Bank's failure to disclose
its negotiations with Mr. Gatti's. He cites no authority for the proposition that, under these
circumstances, the Bank had a duty to disclose the negotiations. He testified that he did not rely
on the Bank for advice; i.e., there was no fiduciary-type relationship that might have created such
a duty. A business has no general duty to disclose information to anyone who might be interested
or affected by that knowledge. See Northwest Otolaryngology Assoc. v. Mobilease, Inc., 786
S.W.2d 399, 405 (Tex. App.--Texarkana 1990, writ denied)(no duty to disclose to lessee that
lessor of vehicle purchased car and then marked up price $1420 before offering for lease; entities
that lease or sell vehicles are allowed to make a profit and not required to divulge the amount to
their customers). Further, there is no evidence that the Bank's failure to disclose its negotiations
caused Greene harm. To the contrary, Greene testified that because, under his interpretation, the
lease did not expire until 1992, he would not have acted differently even if he had known of the
negotiations with Mr. Gatti's. He would not have vacated the property and would have sued on
receipt of the notice to vacate.

 We overrule point of error two. Because of our disposition of this point, we need
not address the Bank's cross-point.



 Attorney's Fees


 In point of error one, appellant contends the trial court erred in submitting a jury
question on the Bank's reasonable and necessary attorney's fees and in rendering judgment for the
amount of such fees because the Bank was not entitled to recover attorney's fees under any theory
presented by its pleadings or proof. 

 The Bank asked for attorney's fees under a provision in the lease (5); under the
Declaratory Judgments Act, Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1986); and under
general provisions for suits involving contracts, Tex. Civ. Prac. & Rem. Code Ann. § 38.001
(West 1986). Greene's theory is that after the court rendered summary judgment declaring that
the lease expired June 30, 1990, no claims remained involving construction of the lease that would
support a claim for attorney's fees. Similarly, he contends that the lease provisions for attorney's
fees do not apply because the proceedings after the summary judgment did not construe the lease
or determine any right or obligation arising from it.

 The Bank responds that it is entitled to attorney's fees because the lease at issue
provides that the successful party is entitled to recover its attorney's fees in prosecuting or
defending any action to enforce rights "arising from" the lease. At the trial, Greene asserted that
the Bank's enforcement, or lack thereof, of the lease lead Greene to believe that the lease did not
expire until July 1992; that the bank mislead him about its right to terminate his tenancy on thirty-days notice because the Bank's continued acceptance of rent payments specified in the amended
lease caused him to believe he still had a lease; and that the Bank committed deceptive trade
practices and unfair business practices by, among other things, not disclosing its negotiations with
Mr. Gatti's for the space.

 After Greene rested, the Bank moved for an instructed verdict. At that point,
Greene withdrew claims for breach of the duty of good faith and fair dealing, negligent
misrepresentation, and constructive eviction. The court granted the Bank an instructed verdict
on breach of contract, waiver, estoppel, ratification, negligence, gross negligence, and fraudulent
concealment. The evidence was completed (6) later that day, and the next morning the court
charged the jury on liability under the DTPA.

 The prevailing party to a lawsuit is entitled to recover attorney's fees if provided
by contract or statute. New Amsterdam Casualty Co. v. Texas Indus., Inc., 414 S.W.2d 914, 915
(Tex. 1967). In general, in cases involving more than one claim, attorney's fees can be awarded
only for necessary legal services rendered in connection with the claims for which recovery is
authorized. Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10-11 (Tex. 1991); Flint & Assoc.
v. Intercontinental Pipe & Steel, Inc., 739 S.W.2d 622, 624 (Tex. App.--Dallas 1987, writ
denied). If, however, all claims arise out of the same transaction and are so interrelated that their
prosecution or defense entails proof or denial of essentially the same facts, then fees may be
awarded for all services, even if recovery of attorney's fees is not authorized for some of the
claims. Stewart Title Co., 822 S.W.2d at 11; Great Am. Ins. Co. v. North Austin Mun. Util.
Dist., 850 S.W.2d 285 (Tex. App.--Austin 1993, writ requested); Flint & Assoc., 739 S.W.2d at
624-25.

 We think the lease provision allows the Bank to recover attorney's fees. The lease
speaks of "successful . . . defense of any proceedings to . . . enforce any right . . . arising from
it . . . ." The Bank's defense to all of Greene's claims was that it was enforcing various rights
under the lease: the right to rent the space to another tenant; the right to have Greene vacate the
space on thirty-days notice; and the right to collect the lower rent without waiving its right to the
higher rent specified for a month-to-month situation. We think this was an action to defend the
Bank's rights under the lease within the meaning of the lease provision. We overrule point of
error one, and affirm the trial court's judgment.



[Before Chief Justice Carroll, Justices Aboussie and Jones; Justice Aboussie not participating]

Affirmed

Filed: August 25, 1993

[Do Not Publish]
1. [1] Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1993) (hereafter cited as
DTPA § ).
2. [2] Because the Bank was managing the property on behalf of the FDIC, regulatory approvals
were necessary to expend the money on finish-out costs.
3. [3] Instructions a and b paraphrase DTPA § 17.46(b)(5) and (b)(7). Instruction c paraphrases
DTPA § 17.46(b)(23), and d, DTPA § 17.46(b)(2).


 Because we will dispose of the evidentiary points based on the existence, or lack thereof,
of a false, misleading, or deceptive act, we do not need to define exactly what constituted the
"good" that was the subject of this instruction. The court defined "Goods" in the charge as
"tangible chattels or real property purchased or leased for use." But Greene does not contend that
a misrepresentation was made about the physical condition of the premises. The issues basically
center around the terms of the occupancy of the space, rather than the space itself.
4. [4] It is difficult to see how this instruction is relevant. This DTPA section is usually applied
to situations such as a false representation that a doctor has endorsed a seller's product; that a
seller has an affiliation with the government; or that a seller's product has been government tested
or approved. See David F. Bragg, Philip K. Maxwell, Joe K. Longley, Texas Consumer
Litigation § 3.05, at 80 (2d ed. 1983).
5. [5] The lease provided:


 Court costs and attorney's fees incurred by either party hereto in
successful prosecution or defense of any legal or equitable
proceedings to construe this lease or enforce any right or obligation
arising from it shall become an obligation due and payable from the
other party.
6. [6] The evidence presented by the Bank after the instructed verdict was testimony from Greene
about the conversation with Wiley; testimony from Reed about the Bank's management of the
Center and attempts to sell it; and testimony from the Bank about its attorney's fees.