DUNN, BRADY, GOEBEL, ULBRICH, MOREL, KOMBRINK & HUNDMAN, Plaintiff-Appellee, *v.* STATE FARM INSURANCE COMPANY, Defendant-Appellant.

Fourth District   No. 17024

Opinion filed September 4, 1981.—Rehearing denied October 14, 1981.

James C. Wollrab, of Costigan & Wollrab, of Bloomington, for appellant.

Livingston, Barger, Brandt, Slater & Schroeder, of Bloomington, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

Our inquiry: Is plaintiff law firm entitled to attorney fees on the subrogation recovery paid to State Farm?

We hold not.

We reverse.

State Farm Insurance (defendant) appeals a circuit court judgment granting plaintiff's motion for summary judgment and denying State Farm's cross-motion for summary judgment. Dunn, Brady (plaintiff)—a legal partnership—sued to recover attorney's fees for services allegedly performed which were beneficial to State Farm. Dunn, Brady claims that through its representation of individuals insured by State Farm (a subrogee), it recovered monies paid to the clients under State Farm's automobile insurance policy.

FACTS

The chronology of events is complex.

On June 19, 1975, at Zephyr Cove, Nevada, an automobile accident occurred. Dallas Lane, members of his family, and a family friend were passengers in Lane's Winnebago which was struck head-on by a car driven by a California resident. The Winnebago was destroyed, Lane's party suffered personal injuries, and the California resident was killed.

The California resident was insured by Commercial Union Assurance Company (Commercial). Lane, an Illinois resident, was insured by State Farm for personal injury, property damage, medical payments, lost earnings, and collision. The Lanes were ultimately paid in excess of $28,000 for physical damages, and medical and wage claims, by State Farm under the policy.

In July 1975, Lane hired plaintiff law firm to represent him in the personal injury suit, and plaintiff contacted State Farm to obtain its investigation file. State Farm referred plaintiff to a field claim representative for Commercial. Both carriers were advised that plaintiff represented the passengers in the Winnebago.

In September of 1975, State Farm began reimbursing the injured for their medical bills, and the insureds signed forms entitled "receipt for expense advance." Those payments continued through 1977, when the case was ultimately settled.

On September 26, 1975, State Farm sent Commercial its notice of subrogation lien. An interoffice memorandum, and deposition testimony in the record from Gerald Larsen, a claims adjuster for Commercial, indicate that by November of 1975 Commercial accepted liability on behalf of its deceased insured and would honor State Farm's subrogation payments upon requisite proof of loss.

On January 28, 1976, plaintiff asked defendant if it could represent State Farm on its subrogation claim. State Farm refused, telling plaintiff that it intended to pursue the subrogation claim directly with Commercial. On April 1, 1976, Commercial began making payments directly to State Farm to offset State Farm's payout to its insureds.

By letter of June 16, 1976, plaintiff notified State Farm that it had filed a negligence suit against the estate of the decedent in Federal court. On May 12, 1977, plaintiff sent a letter to State Farm requesting that it forward an account of all monies received by State Farm from Commercial after the date of the filing of the lawsuit since plaintiff expected State Farm to pay its ratable share of attorney's fees from the monies received on the subrogation claim. By return letter, State Farm refused the request for fees, claiming that it had settled the claim directly with Commercial.

On December 8, 1976, Commercial paid State Farm the second installment on the subrogation claim. A final payout for several inadvertently overlooked items was made by Commercial in early 1978.

On August 17, 1977, State Farm executed a release in the amount of $27,732.82. On or about the same day, a $96,000 settlement was reached, and the insureds also executed releases. The personal injury lawsuit was dismissed on September 27, 1977.

On November 1, 1977, plaintiff again contacted State Farm and requested attorney's fees and a proportionate share of costs. State Farm again declined the request for fees, and this lawsuit resulted.

## THEORY OF SUIT

Plaintiff's right to recover attorney's fees is ostensibly based on the equitable "fund doctrine." The doctrine has been thus described:

> "[W]here a fund has been created as the result of legal services performed by an attorney for his client, and a subrogee of the client, who has done nothing to aid in creating the fund, seeks to benefit therefrom, the attorney is entitled to a fee from the subrogee in proportion to the benefit received by the subrogee. This theory of recovery by an attorney, known as the 'fund doctrine,' is based on the equitable concept that an attorney who performs services in creating a fund should in equity and good conscience be allowed compensation out of the whole fund from all those who seek to benefit from it." (*Baier v. State Farm Insurance Co.* (1977), 66 Ill. 2d 119, 124, 361 N.E.2d 1100, 1102.)

Stated in a different manner it has also been held that,

> "In order to recover under the doctrine it is necessary for a plaintiff seeking recovery from a subrogee to show (1) that the fund was created as a result of legal services performed by an attorney * * *, (2) that the subrogee did not participate in the creation of the fund, and (3) that the subrogee benefited out of the fund that was created." *Smith v. Marzolf* (1980), 81 Ill. App. 3d 59, 64, 400 N.E.2d 949, 953.

Here, the trial court, relying upon *Sobczak v. Whitten* (1979), 75 Ill. App. 3d 208, 393 N.E.2d 1080, concluded that the fund doctrine was applicable because the "settlement" of the subrogation claim between the carriers was only reached after State Farm knew of Dunn, Brady's representation of the insured parties and anticipated ancillary legal action. On appeal, State Farm argues that the fund doctrine is inapplicable to this case because no fund was created and none of Dunn, Brady's legal services in the ancillary personal injury action benefited State Farm. In a nutshell, defendant argues that its activities—not plaintiffs's—were responsible for settlement of the subrogation claim.

## I

■■ The initial question we must resolve has two distinct aspects. Is there a fund, and if so, was it created as a result of legal services performed by plaintiff? The record discloses that agents for Commercial admitted liability as early as November of 1975, four months after they learned plaintiff was representing the Lanes, but seven months prior to the filing of the personal injury lawsuit. In addition, Commercial began making payments on the subrogation claim directly to State Farm some two months prior to the filing of that lawsuit. The record also discloses that settlement negotiations between plaintiff and Commercial were directed solely to the value of the injuries to plaintiff's clients without specific regard to defendant's subrogation interests. On the facts of this case, we hold that no "fund" was created since Commercial acknowledged and agreed to honor State Farm's subrogation claims irrespective of the inchoate personal injury claim. Absent a fund, plaintiff has not demonstrated that it is entitled to any fee for its alleged services.

■■ Even were we to accept the claim that a fund had been created on the theory that the monies emanate from a common source, we nevertheless cannot accept plaintiff's claim to fee entitlement. The second aspect of the fund doctrine requires that the subrogee not participate in the creation of the fund. Here, the facts graphically demonstrate that defendant expended direct and substantial time and energy in pursuing its subrogation claims directly with Commercial.

Thirdly, any possible benefit which defendant might have received on the basis of plaintiff's activity was purely incidental. One must distinguish between the acts establishing the fund as opposed to caretaker activity subsequent to the creation of that fund which necessarily must occur until such time as the nature and extent of the injuries have been diagnosed and treated and all claims have been processed and paid. Plaintiff's only activity in this regard was to gather records, bills, and receipts, turning them over either to State Farm or directly to Commercial on occasion. None of those activities are related to the creation of any fund.

Under the insurance policy, the insured is required to cooperate with his insurance company. To that end, defendant could well have collected the same information directly from the insured without the involvement of plaintiff. Moreover, it is arguable that the marshaling of this documentary evidence was of benefit to the insured rather than the subrogee to the extent that a determination of the nature and extent of the injuries affected the potential value of the injury claim, irrespective of the subrogation lien.

## II
Plaintiff's reliance upon *Sobczak v. Whitten* (1979), 75 Ill. App. 3d

208, 393 N.E.2d 1080, for the proposition that the fund doctrine is applicable because the subrogation "settlement" was only reached after defendant knew of plaintiff's representation of the insured parties and anticipated ancillary legal action is misplaced. In that case, Sobczak was insured by Government Employees Insurance Company (GEICO). Defendant driver of the other vehicle was insured by Dairyland Insurance Company. Sobczak filed a complaint for personal injuries on September 22, 1976. Sometime between October and November of 1976, GEICO sent subrogation notices to Dairyland. On December 20, 1976, Dairyland filed a motion requesting leave to pay the monetary equivalent of the stated policy limits into the court. On the same day, Dairyland deposited $20,000 with the court.

On March 14, 1977, Sobczak filed a motion requesting a hearing to allow plaintiffs to prove damages and allow GEICO to proceed on its claim for subrogation. On March 31, 1977, GEICO filed a petition to intervene, and the funds were ultimately disbursed. GEICO thereafter appealed the trial court's order granting Sobczak's motion to reconsider a prior motion of the court disbursing the $20,000 without any allocation of an amount for plaintiffs' attorney's fees on the proportionate share received by GEICO on its subrogation claim. In granting the motion to reconsider, the court ordered that plaintiffs' attorneys receive approximately one-third of the $20,000 as a fee.

GEICO asserted on appeal that the fund doctrine did not apply because it did not realize any actual benefit from the attorney's services since liability on the claim was clear and payment by the defendant insurance company was certain. The court noted that although defendant's answer to the complaint contested liability, defendant intended to settle from the suit's inception. The court also concluded, however, that it was only through the negotiations of plaintiffs' attorney that the suit was ultimately settled. Issues with regard to the limits of defendant's liability and the documentation of the extent of injuries were resolved solely on the basis of plaintiffs' lawsuit. The appellate court then held that it was not error for the trial court to direct an award of attorney's fees.

Not only are the facts of *Sobczak* distinct from the case at bar, but we do not read the case as broadly as either plaintiff or the trial court. In *Sobczak*, the facts clearly demonstrated that GEICO did nothing to secure payment on its subrogation claim other than tender notices of subrogation to the parties. Sobczak's attorney was primarily responsible for the actual negotiation which resulted in settlement. GEICO played a completely passive role in the litigation up to the point it petitioned to intervene, several months after the funds were already on deposit with the court and subject to Sobczak's motion to prove up damages and allow GEICO to present its claim.

## III

■■ Moreover, while we agree that the questions of notice, anticipated litigation, and contested liability are important, they are not determinative of a subrogee's liability for attorney's fees without an examination of the nature and extent of the carrier's own activities. Were it otherwise, subrogees would always be liable for a proportionate share of attorney's fees in the event an insured's attorney noticed the parties of an intent to file a claim for damages at a time when actual liability for the claim had not yet been conceded by the other carrier. To give effect to plaintiff's argument would force counsel upon a subrogee which not only does not want counsel but does not need counsel to pursue its subrogation claim.

While plaintiff is correct in asserting that no case holds that a complaint must be filed before the fund doctrine applies (*Krause v. State Farm Mutual Automobile Insurance Co.* (1969), 184 Neb. 588, 169 N.W.2d 601), plaintiff ignores the subsequent language in that opinion to the effect that allowance of attorney's fees depends upon "consideration of all of the circumstances including the nature of the contract with the insured and the amount and nature of the services rendered, and the other principles relating to the award of attorney's fees under the law." (184 Neb. 588, 596, 169 N.W.2d 601, 605-06.) In the same light, we have considered each of the cases cited by plaintiff in support of its position and conclude that the factual setting in each case is clearly distinguishable from that present in the case at bar.

## IV

We also reject plaintiff's claim that defendant is estopped from denying liability for fees on the theory that defendant could not have been subrogated to its insured while simultaneously receiving direct payments from Commercial. Plaintiff interprets the insurance contract to require the filing of a lawsuit to protect defendant's subrogation rights. Plaintiff then argues that the failure to file such a suit would abrogate the insured's duty under the insurance contract and defendant would be free to seek repayment of any monies advanced under the policy. The thrust of plaintiff's argument is that the efforts plaintiff rendered in connection with the filing and prosecution of the lawsuit were not only necessary but inherently beneficial to defendant. This argument is without merit.

■■ While the insurance policy requires that the insured do nothing to prejudice the rights of the subrogee, the policy does not dictate that the insured take any particular legal action to enforce the rights of the subrogee. If that were not the case, the International Reciprocal Arbitration Agreement requiring internal negotiation and settlement of certain subrogation claims under a stated amount would be pointless. The insurance contract clause is clearly there for the protection of the subrogee in the

event that the insured finds it necessary to file suit to seek damages in excess of those or different from those covered by the insurance policy. The subrogee, however, is obviously free to pursue its own remedy against another carrier without the consent of the insured.

## V

■■ ■ Finally, plaintiff argues that the trial court could have entered summary judgment on count II of the amended complaint, which alleged that under Nevada law, plaintiff was entitled to equitable apportionment of the expenses, costs, and services rendered. The trial court specifically declined to grant relief to plaintiff on that count because disposition with regard to count I terminated the litigation, obviating the need to address the alternative theory. The trial court did, however, deny defendant's motion for summary judgment, which was directed toward both counts of the complaint. Since the denial of a motion for summary judgment is never a final or appealable order, that issue is not properly before this court for review at this time. (*Simon v. Jones* (1968), 96 Ill. App. 2d 1, 238 N.E.2d 259.) In view of the erroneous disposition as to plaintiff's motion for summary judgment, we remand to the trial court for reconsideration of count II of the complaint.

For the foregoing reasons, the judgment of the circuit court is reversed and remanded with directions to enter summary judgment in favor of defendant as to count I of the complaint and for further proceedings.

Reversed and remanded with directions.

LONDRIGAN and GREEN, JJ., concur.