LANCER CORPORATION, Appellant,

v.

Juventino MURILLO, Maria Murillo, Edgar Murillo and Juventino Murillo, Jr., Appellees.

No. 04–94–00814–CV.

Court of Appeals of Texas, San Antonio.

Sept. 6, 1995.

Les Katona, Jr., Lang, Ladon, Green, Coghlan & Fisher, P.C., San Antonio, for appellant.

George W. Mauze, II, Law Offices of Mauze & Jones, San Antonio, for appellees.

Before CHAPA, C.J., and RICKHOFF and STONE, JJ.

## OPINION

RICKHOFF, Justice.

This appeal questions whether a self-insured employer is liable to its insured employee for attorney's fees and litigation expenses when it rejects the insured's offer of representation and intervenes in third-party litigation to protect its subrogation interest. The appellant and self-insured, Lancer Corporation, appeals from a judgment granting attorney's fees and expenses to its insureds, the appellees, Juventino Murillo, Maria Murillo, Edgar Murillo and Juventino Murillo, Jr. (collectively, Murillo). In fourteen points of error, Lancer contends the trial court erred in awarding attorney's fees and expenses to the appellees because there is no legal, equitable, or factual basis for the award. We find the common fund doctrine applicable but also find the appellate record insufficient to evaluate the sufficiency of the evidence to support the award. We affirm.

### Summary of Facts

Lancer, a self-insured manufacturer, pays medical benefits to its employees. According to Lancer's group benefit plan, the company may recover from its employee any money it expends on the employee's behalf as a result

of an accident or injury caused primarily by a third party. The plan also requires participants to notify Lancer of any pending legal action or third-party recovery. The plan does not discuss attorney's fees and litigation expenses.

In February 1992, Maria Murillo, wife of Lancer's employee Juventino Murillo, was injured in a gas explosion in her home. Pursuant to its benefit plan, Lancer paid Maria $101,325.85 in medical expenses. In June 1992, Juventino signed Lancer's "Reimbursement Agreement," wherein he authorized his family's attorney to reimburse the corporation for the benefits received.

In October 1992, Murillo filed suit against City Public Service (CPS), agent for the City of San Antonio, for the injuries the family sustained in the gas explosion. A month later, Murillo's attorney wrote Lancer a letter offering to assist its recovery of the paid medical benefits. Specifically, the attorney proposed a one-third contingency fee on the recovered amount and expense sharing up to $6,000. Lancer's chief executive officer rejected the offer.

In February 1993, Lancer intervened in the suit, alleging its contractual right of subrogation and seeking repayment of the benefits it paid on Maria's behalf. It propounded interrogatories and requests for production to CPS. In turn, it responded to interrogatories and requests for production propounded by CPS and filed a motion for protective order. According to Lancer's attorney, he attended approximately five depositions and five hearings associated with the case and incurred $13,000 in attorney's fee. Murillo's attorney testified that Lancer participated in two or three of sixty depositions and about twenty percent of the discovery related hearings.

The Murillo family stipulated that Lancer expended $101,325.85 in medical benefits and agreed to pay that sum from any monies received from CPS. They further agreed to release Lancer from future medical benefits to the extent the jury found CPS liable for future medical care. Both the Murillo family and Lancer contended each was entitled to attorney's fees and litigation costs, and agreed to submit the issue to the trial court.

In March 1994, the third-party action was submitted to trial. During the jury's deliberations, the Murillo family settled its claim against CPS for $4.3 million, and the court severed CPS from the case. The court permitted the jury to reach a verdict to determine the amount of Maria's future medical care; the corresponding jury award was $2.5 million. Murillo and Lancer then tried the issues of attorney's fees and litigation expenses before the trial court.

After hearing the evidence and taking judicial notice of usual and customary attorney's fees, the court found that Murillo's attorney provided "practically all" the legal services resulting in the recovery. It further found that these services were necessary and created a "tremendous benefit" for Lancer. In light of the issues involved, the amount in controversy, and efforts expended, the court concluded that Murillo was entitled to attorney's fees and litigation expenses.

The trial court rendered judgment for Lancer in the amount of its subrogated interest, $101,316.25,[1] less $33,775.28, one-third of the recovered medical benefits representing Murillo's attorney's fees, and less $7,398.00, one-third of Murillo's litigation expenses not reimbursed by CPS. Thus, Lancer's net recovery was $60,142.97, together with postjudgment interest. The judgment also released Lancer from $2.5 million in future medical benefits related to the accident.

### Arguments on Appeal

Although the judgment did not expressly award Murillo attorney's fees and expenses, it effectively did so by reducing Lancer's subrogated interest. On appeal, Lancer assigned fourteen points of error to this reduction, arguing there is no legal or equitable basis for such an award and no evidence to support it.

### 1. Standard of Review

 A reviewing court will not overturn a trial court's allowance of attorney's fees or litigation expenses unless the award consti-

---

1. This figure is slightly less than that requested by Lancer ($101,325.85).

tutes a clear abuse of discretion. *Hartford Accident & Indem. v. Collins*, 895 S.W.2d 750, 751 (Tex.App.—Corpus Christi 1995, no writ) (expenses); *Ross v. 3D Tower Ltd.*, 824 S.W.2d 270, 273 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (attorney's fees). The test for whether the trial court abused its discretion is whether it acted without reference to any guiding rules and principles, that is, whether the court's action was arbitrary and unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In deciding whether a trial court acted arbitrarily, we may review the trial court's findings for legal and factual sufficiency of the evidence. *See Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex.1991); *Jackson v. Barrera*, 740 S.W.2d 67, 68–69 (Tex.App.—San Antonio 1987, no writ).

**2. Basis of the Award**

■ Generally, attorney's fees and expenses are not recoverable unless expressly provided for in contract or by statute. *New Amsterdam Casualty Co. v. Texas Indus., Inc.*, 414 S.W.2d 914, 915 (Tex.1967); *Baja Energy, Inc. v. Ball*, 669 S.W.2d 836, 838 (Tex.App.—Eastland 1984, no writ). In its first through third points of error, Lancer argues there is no contractual or statutory basis for the award in this case.[2] Murillo conceded these points at oral argument, observing, as do we, that fees and expenses may be recovered on equitable principles. *See, e.g., Enochs v. Brown*, 872 S.W.2d 312, 321 (Tex.App.—Austin 1994, no writ) (quantum meruit); *Ball*, 669 S.W.2d at 838 (common fund).

Although the parties agree quantum meruit is not applicable, they dispute the viability of the common fund doctrine. Lancer raises this contention in its fourth point of error, which states there is no equitable basis for the court's award.

■ Under the common fund doctrine, the court may allow reasonable attorney's fees to a litigant who, at his own expense, has maintained a suit which creates a fund benefitting other parties as well as himself. *Trustees v. Greenough*, 105 U.S. 527, 532–37, 26 L.Ed. 1157 (1881); *Knebel v. Capital Nat'l Bank*, 518 S.W.2d 795, 799–801 (Tex.1974). The common fund doctrine is based on the principle that those receiving the benefits of the suit should bear their fair share of the expenses. *Greenough*, 105 U.S. at 533–34; *Knebel*, 518 S.W.2d at 799.

Although the common fund doctrine has been infrequently asserted in Texas, the courts have applied it to class actions, *see, e.g., City of Dallas v. Arnett*, 762 S.W.2d 942, 954 (Tex.App.—Dallas 1988, writ denied); shareholder derivative suits, *see, e.g., Bayliss v. Cernock*, 773 S.W.2d 384, 386–87 (Tex. App.—Houston [14th Dist.] 1989, writ denied); and insurance subrogation, *see, e.g., Camden Fire Ins. Ass'n v. Missouri, Kentucky & Tennessee Ry. Co.*, 175 S.W. 816, 821 (Tex.Civ.App.—Dallas 1915, no writ).[3] The Texas Supreme Court rejected application of the common fund doctrine when a hospital holds a statutory lien against a debtor injured by a third party. *Bashara v. Baptist Memorial Hosp. Sys.*, 685 S.W.2d 307, 310–11 (Tex.1985).[4]

Although there is no contractual or statutory basis for the trial court's award, there is

---

**2.** The first point of error states "there is no basis in law for such award." The second and third points of error maintain the award is contrary to the express terms of the benefit plan. The contract is actually silent regarding fees and expenses. In such a case, equity is not precluded. *See State Farm Mut. Auto. Ins. Co. v. Elkins*, 451 S.W.2d 528, 530 (Tex.Civ.App.—Tyler 1970, no writ).

**3.** The Texas cases applying this doctrine to insurance subrogation have not used the descriptive words "common fund," but other cases and commentators cite these cases as examples of the common fund doctrine. *See, e.g., United Servs.*

*Auto. Ass'n v. Hills*, 172 Neb. 128, 109 N.W.2d 174, 178 (1961); 16 MARK S. RHODES, COUCH ON INSURANCE 2D § 61.47, at 130 n. 3 (rev. ed. 1983).

**4.** Although Lancer relied on *Bashara* in its appellate brief to discredit common fund use, it admitted at oral argument that *Bashara* did not address the subrogation application of the common fund doctrine. We do not find *Bashara* dispositive in this appeal. *See Martinez v. St. Joseph Healthcare Sys.*, 117 N.M. 357, 360, 871 P.2d 1363, 1366 (1994) (characterizing *Bashara* as a case of statutory construction unique to the Texas hospital lien).

a potential equitable basis. Accordingly, we overrule Lancer's second through fourth points of error but sustain its first point of error. We now turn to the common fund elements.

### 3. Existence of Subrogation

The trial court found that Lancer had a right of subrogation, pursuant to its benefit plan, for the total medical expenses paid on Murillo's behalf. Consistent with the common fund doctrine, it thereafter concluded that Murillo was equitably entitled to recover attorney's fees and expenses.

We read Lancer's ninth through eleventh points of error as challenges to the legal and factual sufficiency of the evidence to support the court's subrogation finding.[5] In its related fifth point of error, Lancer maintains it had only a debtor-creditor relationship with Murillo, to which equitable principles do not apply.

██ Subrogation is the substitution of one person in the place of another with reference to a lawful right or claim. *Cockrell v. Republic Mortgage Ins. Co.*, 817 S.W.2d 106, 113 (Tex.App.—Dallas 1991, no writ). Subrogation may be equitable (legal) or contractual (conventional). *Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 338 (Tex.1980); *Interfirst Bank Dallas, N.A. v. United States Fidelity & Guar. Co.*, 774 S.W.2d 391, 397 (Tex.App.—Dallas 1989, writ denied).

██ Lancer contends it cannot subrogate because it is a self-insured manufacturer, not an insurance company. We find this distinction without merit. Subrogation is liberally applied and is broad enough to include every instance where one person, not acting voluntarily, pays a debt another incurs. *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 541–42 (Tex.App.—Corpus Christi 1993, writ denied). For example,

subrogation has been used by sureties, *Interfirst Bank Dallas*, 774 S.W.2d at 398; guarantors, *Northwest Otolaryngology Assocs. v. Mobilease, Inc.*, 786 S.W.2d 399, 402 (Tex. App.—Texarkana 1990, writ denied); and creditors, *Cannon Ball Truck Stop, Inc. v. Mobil Oil Corp.*, 501 S.W.2d 927, 929 (Tex. Civ.App.—Houston [14th Dist.] 1973, writ ref'd n.r.e.). Furthermore, the application of subrogation to parties who are not insurance companies does not prevent the use of the common fund doctrine. *See Taylor v. State Univs. Retirement Sys.*, 203 Ill.App.3d 513, 148 Ill.Dec. 296, 301, 560 N.E.2d 893, 898 (1990) (applying common fund doctrine to state agency that paid disability benefits), *appeal denied*, 136 Ill.2d 555, 153 Ill.Dec. 385, 567 N.E.2d 343 (1991).

Lancer also argues that, according to the terms of its contract, it cannot "step into the shoes" of Murillo as would a subrogated insurance company. Under a section entitled, "Subrogation," the contract provides as follows:

> If an insured receives treatment, services or supplies as a result of an accident or injury caused primarily by a third party and if the insured is taking legal action to recover damages from the third party, *this benefit plan will have the right to recover, from the covered employee,* any compensation for medical expenses incurred and previously paid under this policy.

(Emphasis added.)[6]

██ Subrogation rights may be waived or altered by contract. *National Union Fire Ins. Co. v. Pennzoil Co.*, 866 S.W.2d 248, 251–52 (Tex.App.—Corpus Christi 1993, no writ); *Foster v. Langston*, 170 S.W.2d 250, 251 (Tex.Civ.App.—San Antonio 1943, no writ). However, we need not decide whether Lancer's contract altered its subrogation rights because, in its live plea of intervention, Lancer asserted it "is subrogated to Plain-

---

5. While the tenth point of error specifically addresses evidentiary concerns, the ninth point of error states "Lancer did not have a right of subrogation." The eleventh point of error states "there is no legal basis" for a subrogation finding.

6. *Compare Crowder v. Benchmark Bank,* 889 S.W.2d 525, 529 (Tex.App.—Dallas 1994, writ

granted) (deed of trust permitted beneficiary to seek subrogation "to any and all rights and liens"); *Highlands Ins. Co. v. New England Ins. Co.*, 811 S.W.2d 272, 275 (Tex.App.—San Antonio 1991, no writ) (insurance policy allowed insurer to seek subrogation "against any person or organization").

tiff's rights." This judicial admission is binding on Lancer. *Mendoza v. Fidelity & Guar. Ins. Underwriters, Inc.,* 606 S.W.2d 692, 694 (Tex.1980); *Walker v. Kleiman,* 896 S.W.2d 413, 415 (Tex.App.—Houston [1st Dist.] 1995, n.w.h.). Additionally, Lancer's CEO testified at trial that its claim was based on subrogation. Thus, the evidence indicated that Lancer was more than Murillo's creditor.

We conclude there is legally and factually sufficient evidence to support the trial court's finding that Lancer was subrogated to Murillo. Accordingly, we overrule Lancer's fifth and ninth through eleventh points of error.

### 4. Existence of a Common Fund

We read Lancer's sixth through eighth points of error as a challenge to the legal and factual sufficiency of the evidence to support the trial court's implied finding that the funds paid to Lancer derived from a common fund.[7]

■■■ The evidence shows that Murillo settled her case against the third-party tortfeasor for $4.3 million, more than enough for Murillo to reimburse Lancer its $101,325.85. We find this evidence both legally and factually sufficient to support a finding that the money paid to Lancer derived from a common fund.

■■■ Lancer also contends that Murillo's personal injury action did not create a fund benefitting a "class" of beneficiaries. While the common fund may benefit many people, *see Knebel,* 518 S.W.2d at 797, it need not. *See Camden Fire Ins. Ass'n,* 175 S.W. at 817.

We overrule Lancer's sixth through eighth points of error.

### 5. Extent of Insurer's Assistance

Lancer argues that the common fund doctrine does not apply when the insurer intervenes in third-party litigation or rejects the plaintiff's offer of representation. Lancer suggests that the Texas cases permit fee-shifting only where the insurer fails to intervene in the third-party case.

In *Camden Fire Insurance Association,* the insurer did not intervene in third-party litigation to protect its subrogated interest, and the court deducted reasonable expenses from the subrogated interest. 175 S.W. at 821. The court adopted the common fund doctrine but commented that fee sharing was not appropriate where "the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with [the insured] in, the prosecution" of the third-party claim. *Id.*

In other words, the proceeds owed to an "insurer who did not assist in their collection, must bear the cost and expense of their collection." *State Farm Mut. Auto. Ins. Co. v. Elkins,* 451 S.W.2d 528, 532 (Tex.Civ. App.—Tyler 1970, no writ) (involving an insurer who did not intervene). The Supreme Court disapproved the total reimbursement in *Elkins,* but noted that, "even in *Elkins* [,] the court recognized that when an insurer does not assist in the collection of damages from the third party tortfeasor, it must pay its share of the costs and expenses incurred in obtaining recovery from the third party, including attorney fees." *Ortiz v. Great S. Fire & Casualty Ins. Co.,* 597 S.W.2d 342, 344 (Tex.1980).

These Texas cases do not explain to what extent an insurer must "assist" the third-party recovery to avoid application of the common fund doctrine. We recognize that some states require very little participation. *See, e.g., Oakley v. Fireman's Fund,* 162 Wis.2d 821, 470 N.W.2d 882, 887 (1991) (rejecting common fund when insurer refused insured's offer of representation); *Abston v. Aetna Casualty & Surety Co.,* 131 Mich.App. 26, 346 N.W.2d 63, 66 (1983) (declining common fund when medicaid provider rejected offer of representation); *Travelers Ins. Co. v. Williams,* 541 S.W.2d 587, 590 (Tenn.1976) (rejecting common fund when carrier hired its own attorney). *See also* 1 ROBERT L. ROSSI, ATTORNEY'S FEES § 6.20 (2d ed. 1995) (collecting cases).

Other states require the insurer to actively participate to avoid application of the com-

---

7. The sixth point of error states "the funds paid to Lancer were not derived from a common fund." The seventh and eight points of error specifically address sufficiency of the evidence.

mon fund doctrine. *See, e.g., Castellari v. Partners Health Plan,* 860 P.2d 593, 595 (Colo.Ct.App.1993) (defining "active participation" as aiding the recovery of the common fund); *Blue Cross & Blue Shield v. Freeman,* 447 So.2d 757, 759 (Ala.Civ.App. 1983) (concluding that intervention, without more, did not contribute toward recovery of the fund); *Dunn, Brady, Goebel, Ulbrich, Morel, Kombrink & Hundman v. State Farm Ins. Co.,* 100 Ill.App.3d 93, 55 Ill.Dec. 340, 343, 426 N.E.2d 315, 318 (1981) (finding active participation when carrier rejected plaintiff's representation offer and negotiated with third-party's carrier). *See also* Annotation, *Right of Attorney for Holder of Property Insurance to Fee Out of Insurer's Share of Recovery from Tortfeasor,* 2 A.L.R.3d 1441 (1965) (collecting cases).

 The Texas cases require the insurer to "contribute" or "assist" with the third-party recovery.[8] One can intervene in litigation without aiding the third-party recovery; one can assist the recovery without intervening. In deciding whether intervention would be beneficial, the parties may consider the advantages and disadvantages of having the plaintiff's own insurer named as a party. A similar analysis can be applied to the insurer's rejection of the plaintiff's offer of representation. Thus, we conclude that the rejection of the insured's offer of representation and the carrier's intervention in the third-party litigation are factors demonstrating the insurer's contribution and assistance with the third-party recovery. The extent of this aid, therefore, is a fact question. *Steinberg v. Allstate Ins. Co.,* 226 Cal. App.3d 216, 221, 277 Cal.Rptr. 32, 35 (Cal.Ct. App.1990, review denied). *See also Perez v. Kujawa,* 234 Ill.App.3d 957, 176 Ill.Dec. 731, 734, 602 N.E.2d 38, 41 (1992).

### 6. Evidence Supporting the Award

In its twelfth and thirteenth points of error, Lancer contends there is legally and factually insufficient evidence to support the trial court's award.

The trial court found that: (1) "practically all of the legal services rendered which resulted in the recovery were rendered by" Murillo's attorney; (2) Lancer thereby obtained "a tremendous benefit," including the recovery of paid medical benefits and a release of future liability; (3) a one-third contingency fee was reasonable and customary considering the facts and complexity of the case, the issues and skills involved, and the amount of time and effort required; and (4) Lancer should share one-third the cost of Murillo's unreimbursed $23,146 in reasonable and necessary litigation expenses.

 In the absence of other evidence supporting an award of attorney's fees, the reviewing court will presume that the trial court took judicial notice of the usual and customary fees and of the contents of the case file in determining the amount of attorney's fees awarded. *Long Trusts v. Atlantic Richfield Co.,* 893 S.W.2d 686, 688 (Tex. App.—Texarkana 1995, no writ); *Bloom v. Bloom,* 767 S.W.2d 463, 471 (Tex.App.—San Antonio 1989, writ denied). The party seeking review of the trial court's award of attorney's fees has the burden of presenting the reviewing court with a record showing that the trial court abused its discretion in making the award. *Estopar Holdings, Inc. v. Advanced Metallurgical Technology, Inc.,* 876 S.W.2d 205, 211 (Tex.App.—Fort Worth 1994, no writ); Tex.R.App.P. 50(d).

 Here, the appellate record contains the statement of facts from the bench trial on attorney's fees and expenses but no statement of facts from the associated jury trial. While the appellate record contains a transcript, many of the pleadings associated with the third-party litigation are not included. Because we presume the trial court took judicial notice of the entire case file, which we do not have, we cannot determine wheth-

---

8. Similarly, the workers' compensation statute allows recovery of an attorney's fee when the carrier's interest was not actively represented by its own attorney. Tex.Rev.Civ.Stat.Ann. art. 8307, § 6a(a), *repealed by* Act of Dec. 12, 1989, 71st Leg., 2d C.S., ch. 1, §§ 16.01(10), 17.18, 1989 Tex.Gen.Laws 1, 114, 122 (effective Jan. 1, 1991) (current version at Tex.Labor Code Ann. § 417.003 (Vernon 1995)). Litigation expenses, however, are not recoverable. *Collins,* 895 S.W.2d at 751–52.

er the trial court abused its discretion in making the award.

We overrule Lancer's twelfth and thirteenth points of error.

### 7. Equity of the Award

In its fourteenth and final point of error, Lancer argues that the trial court's award is inequitable because it requires Lancer to pay attorney's fees for itself and Murillo. Lancer points out that Murillo's attorney conceded that it should receive a $13,000 credit for its own attorney's fees.

■ On the record, the trial court said that Murillo's attorney suggested the credit if he received one-half Lancer's recovery as attorney's fees. Instead, the trial court granted one-third the recovery (not including the release of future liability) as attorney's fees and did not give Lancer the $13,000 credit. We cannot say the trial court abused its discretion in making this award. *See State Farm Mut. Auto. Insurance Co. v. Bing,* 305 Ark. 280, 808 S.W.2d 304, 305 (1991) (finding no inequity in the carrier's payment of its own fees and the plaintiff's fees).

We overrule Lancer's fourteenth point of error.

### Conclusion

We sustain Lancer's first point of error, contesting the statutory basis for the trial court's award. However, this point of error is not dispositive. Because we overrule Lancer's remaining points of error, we affirm the trial court's judgment.