

# IN THE
# TENTH COURT OF APPEALS

## No. 10-14-00327-CV

**DEFENSE RESOURCE SERVICES, LLC,**

**Appellant**

 **v.**

**FIRST NATIONAL BANK OF CENTRAL TEXAS,**

**Appellee**

**From the 170th District Court
McLennan County, Texas
Trial Court No. 2013-3668-4**

## MEMORANDUM OPINION

In two issues, appellant, Defense Resource Services, LLC ("DRS"), challenges a judgment entered in favor of appellee, First National Bank of Central Texas ("FNB"). Specifically, DRS asserts that the trial court erred because it determined: (1) that FNB's 1991 lien secured both a 1991 loan and a 2008 loan, even though the 1991 loan was paid in full; and (2) that the payment of the 1991 loan did not allow DRS superior lien priority to the 2008 loan through subrogation. We affirm.

## I.   BACKGROUND

On June 27, 1991, Coke and Margaret Mills borrowed $196,000 from Central National Bank of Waco, Texas ("CNB"), to purchase a homestead in Waco, Texas. The Mills executed a Real Estate Lien Note payable to CNB and a Deed of Trust granting CNB a lien on the property. The 1991 Deed of Trust provided the following, in pertinent part:

1. **SECURES OTHER INDEBTEDNESS; HOMESTEAD DECLARATION.**

   This deed of trust shall secure in addition to the above Indebtedness [1991 loan] any and all other indebtedness of the undersigned [the Mills] to the BANK now owing or which may hereafter become owing whether evidenced by note, open account, overdraft, endorsement, surety, guaranty or otherwise . . . .

(Emphasis in original). Subsequently, in 1996, CNB transferred the 1991 note and Deed of Trust to FNB.

In June 2008, the Mills borrowed $138,000 from FNB secured by equity in the homestead.[1] The Mills executed a Real Estate Lien Note and a Deed of Trust granting FNB a lien on the property. By 2010, the Mills had defaulted on both the 1991 and 2008 loans.

In the fall of 2011, Margaret engaged Scott Nix, one of the managers of DRS, to assist her in her dealings with FNB with respect to the loans. However, on January 12, 2012, FNB posted the homestead for a March 2012 foreclosure under the 1991 Deed of Trust. In response to this, Nix, on behalf of the Nix Family Limited Partnership, offered to purchase the 1991 note and lien, but not the 2008 note, from FNB. Nix told FNB that

---

[1] The record also reflects that, in October 2006, the Mills borrowed another $100,000 from FNB secured by equity in the homestead. This loan is not at issue in this appeal.

he was "working with Margaret on a reverse mortgage," though he later admitted that the Mills did not have a "rat's ass chance in hell of getting a reverse mortgage." In any event, FNB declined to sell the 1991 note but agreed to postpone foreclosure until April 2012. Nix made additional overtures to purchase the 1991 note, but FNB declined to sell.

The day before the April 2012 foreclosure sale, Nix, allegedly acting on behalf of DRS, paid the 1991 loan, but not the 2008 loan, in full. FNB did not sell or assign the 1991 note or lien to DRS. Furthermore, the record does not reflect that FNB entered into any subrogation agreement with DRS.

On March 28, 2012, FNB accelerated the balance of the 2008 note and filed an application for foreclosure in the trial court. In any event, on March 30, 2012, the Mills executed a Real Estate Lien Note payable to DRS in the amount of $130,091.95. Additionally, the Mills executed a Deed of Trust granting DRS a lien on the property. Included in the Deed of Trust was subrogation language granting to DRS FNB's first-lien position under the 1991 Deed of Trust. FNB argues and the trial court agreed that FNB never agreed to subrogate its lien position to DRS.

On August 13, 2012, the trial court entered an order of foreclosure, which prompted FNB to post the property for a September 2012 foreclosure. To prevent the foreclosure, the Mills retained the services of Karl Quebe, whose job, according to Nix, was to use the threat of litigation to convince FNB "to pull the foreclosure and negotiate a settlement on the home equity loan. Anything below half of the original balance is a fair deal." FNB refused to negotiate the 2008 loan.

Therefore, on September 26, 2012, Quebe, on behalf of the Mills, sent a demand letter to FNB asserting that FNB had violated several Texas home-equity laws and other claims allegedly conceived of by Nix. However, because the Mills had to wait sixty days after the demand letter to file suit, and because FNB planned to foreclose on the homestead soon, Nix recommended that the Mills file bankruptcy. Nix acknowledged that the bankruptcy filing was done solely for the purpose of delay. The bankruptcy court ultimately found that the Mills had filed the bankruptcy in bad faith and granted FNB relief from the automatic stay to foreclose.

FNB subsequently noticed the property for a March 5, 2013 foreclosure. But, prior to the March 5, 2013 foreclosure, the Mills filed suit, challenging the validity and enforceability of the 2008 loan. The filing of the lawsuit effectively stayed the March 2013 foreclosure. The trial court later granted summary judgment in favor of FNB on the majority of the Mills' claims.

On August 28, 2013, FNB and the Mills settled their dispute. As a result of the settlement, the Mills agreed not to interfere with FNB's foreclosure. Thereafter, the trial court entered a final judgment declaring that FNB's 2008 lien was "valid, and enforceable" and authorizing FNB to foreclose on the property.[2]

---

[2] In its conclusions of law, the trial court determined that:

1. The 1991 Lien secured the 1991 Note and the 2008 Note.

2. Because DRS paid only part of the Mills['s] debt secured by the 1991 Deed of Trust [the 1991 loan, but not the 2008 loan], it is not entitled to enforce its rights, including its rights of subrogation, if any, until the Bank's debt secured by the 1991 Deed of Trust is paid in full.

Despite the settlement between the Mills and FNB, Nix appointed Quebe as trustee under the DRS Deed of Trust and noticed the property for foreclosure on October 1, 2013. In response to Nix's foreclosure attempt, FNB filed an original petition and application for a temporary restraining order, temporary injunction, and permanent injunction. In its petition, FNB sought a declaration from the trial court that the 2008 note is superior to and takes priority over the DRS lien. The trial court enjoined DRS's foreclosure attempt. Furthermore, on March 20, 2014, the trial court once again allowed FNB to foreclose on the property and ordered that the net proceeds from the sale were to be deposited into the registry of the court.

In May 2014, FNB foreclosed on the property, and the property sold for $210,000. The sale of the property resulted in a deficiency for FNB because the amount due on the 2008 note had increased to more than $280,000 due to attorney's fees and expenses incurred in defeating the Mills and Nix's attempts to stave off foreclosure.[3]

On August 25, 2014, the trial court entered its final judgment, declaring the DRS lien to be subordinate to FNB's 2008 Deed of Trust at the time of the foreclosure sale. The trial court also concluded that the DRS lien was extinguished as a result of the foreclosure sale; thus, the DRS lien is of no further force and effect. At the request of the parties, the

---

*See, e.g., Providence Inst. for Sav. v. Sims*, 441 S.W.2d 516, 519 (Tex. 1969) ("[A] person who is subrogated to the rights or securities of another may not enforce the same until the claim of the latter is paid in full . . . .").

[3] As of September 19, 2013, FNB alleged that the amount owed on the 2008 loan was approximately $281,830.34.

trial court entered numerous findings of fact and conclusions of law. This appeal followed.[4]

## II. STANDARD OF REVIEW

Findings of fact entered in a case tried to the court have the same force and dignity as a jury verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). We thus review findings of fact by the same standards that are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *Id.*

An appellate court may sustain a legal-sufficiency challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 334 (Tex. 1998). In determining whether there is legally-sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Cent. Ready Mix Concrete Co. v. Islas*, 228 S.W.3d 649, 651 (Tex. 2007); *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005).

---

[4] Pursuant to Texas Rules of Appellate Procedure 42.3(b) and (c), we initially dismissed this appeal due to DRS's failure to timely file a docketing statement, despite a warning letter from this Court. *See* TEX. R. APP. P. 42.3(b)-(c); *see also Def. Res. Servs., LLC v. First Nat'l Bank of Cent. Tex.*, No. 10-14-00327-CV, 2015 Tex. App. LEXIS 371 (Tex. App.—Waco Jan. 15, 2015, no pet.) (mem. op.) (op. withdrawn). However, we later granted DRS's motion for rehearing to reinstate this appeal. *See generally Def. Res. Servs., LLC v. First Nat'l Bank of Cent. Tex.*, No. 10-14-00327-CV, 2015 Tex. App. LEXIS 1388 (Tex. App.—Waco Jan. 29, 2015, order on reh'g) (per curiam).

Anything more than a scintilla of evidence is legally sufficient to support the finding. *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 450 (Tex. 1996); *Leitch v. Hornsby*, 935 S.W.2d 114, 118 (Tex. 1996). When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence. *Kindred v. Con/Chem., Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). More than a scintilla of evidence exists if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds about the existence of a vital fact. *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002).

When considering the factual sufficiency of the evidence to support an adverse ruling on which the party challenging the judgment did not have the burden of proof, we examine all of the evidence and "set aside the [finding] only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). Under either standard of review, the trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *see Wilson*, 168 S.W.3d at 819.

## III. ANALYSIS

In its issues on appeal, DRS asserts that the trial court erred because it determined: (1) that FNB's 1991 lien secured both a 1991 loan and a 2008 loan, even though the 1991 loan was paid in full; and (2) that the payment of the 1991 loan did not allow DRS superior lien priority to the 2008 loan through subrogation. Essentially, DRS contends that it was

entitled to be subrogated to FNB's senior lien position under the 1991 note because DRS had paid the balance of the 1991 note in full.

## A. The Trial Court's Findings of Fact

At the outset, we note that DRS has not specifically challenged any of the findings of fact entered by the trial court; instead, it complains generally about the trial court's judgment.

> When a party appeals from a nonjury trial, it must complain of specific findings and conclusions of the trial court, because a general complaint against the trial court's judgment does not present a justiciable question. *Fiduciary Mort. Co. v. City Nat'l Bank*, 762 S.W.2d 196, 204 (Tex. App.—Dallas 1988, writ denied). Accordingly, findings of fact and conclusions of law are mandatory for a party to file to avoid the onerous presumptions that apply in an appeal from a nonjury trial. When an appellant does not request or file findings and conclusions by the trial court, the appellate court presumes the trial court found all fact questions in support of its judgment, and the reviewing court must affirm that judgment on any legal theory finding support in the pleadings and evidence. *Point Lookout West, Inc. v. Whorton*, 742 S.W.2d 277, 278 (Tex. 1987).

> If the appellant does not challenge the trial court's findings of fact, when filed, these facts are binding upon both the party and the appellate court. *Wade v. Anderson*, 602 S.W.2d 347, 349 (Tex. Civ. App.—Beaumont 1980, writ ref'd n.r.e.). Accordingly, it is incumbent for the appellant to attack the findings by the appropriate legal and factual sufficiency points of error. *Lovejoy v. Lillie*, 569 S.W.2d 501, 504 (Tex. Civ. App.—Tyler 1978, writ ref'd n.r.e.). In an appeal of a nonjury trial, findings are specifically and meaningfully tied to appropriate standards of appellate review and are therefore truly beneficial to appellate review. *See Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 853 (Tex. 1992).

*Apodaca v. Rios*, 163 S.W.3d 297, 303 (Tex. App.—El Paso 2005, no pet.). Therefore, because DRS lodges only general complaints about the trial court's judgment, DRS has not presented a justiciable question. *See id.; see also Fiduciary Mort. Co.*, 762 S.W.2d at 204.

**B.    Equitable Subrogation**

However, to the extent that DRS's appellate complaints could be construed liberally as appropriate challenges to the trial court's findings and conclusions, we conclude that the record contains sufficient evidence to support the trial court's findings and conclusions.   More specifically, as shown below, the record contains sufficient evidence to support the trial court's conclusion and corresponding findings rejecting DRS's subrogation argument.

"Subrogation is the substitution of one person in the place of another with reference to a lawful right or claim."   *Lancer Corp. v. Murillo*, 909 S.W.2d 122, 127 (Tex. App.—San Antonio 1995, no writ) (citing *Cockrell v. Rep. Mortg. Ins. Co.*, 817 S.W.2d 106, 113 (Tex. App.—Dallas 1991, no writ)).    There are three circumstances in which subrogation may arise:   (1) purely contractual involving an agreement between the original lienholder and the person paying the debt; (2) purely equitable where there is no agreement to subrogate between the lenders and there is no subrogation language in the deed of trust executed by the borrower in favor of the new lender; and (3) "hybrid" category where there is no agreement between the two lenders, but the deed of trust executed by the borrower in favor of the new lender contains subrogation language.   *See id.; see also Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 631 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

Here, there is no subrogation agreement between DRS and FNB; however, the DRS deed of trust with the Mills contains subrogation language.   As such, the situation involved in the instant case aligns with the "hybrid" category.   In this category, "as to the

nonparty, subrogation depends partially on equitable principles." *Lyda Swinerton Builders, Inc. v. Cathay Bank*, 409 S.W.3d 221, 248 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

> The cornerstone of this equitable analysis is prejudice to the intervening lienholder that is not a party to the subrogation contract. For example, merely changing the identity of the senior lienholder does not affect the intervening lienholder's rights and therefore is not prejudicial. Although subrogation may alter who holds the senior lien, the junior lienholder is still junior and still in the same amount. Whether subrogation prejudices intervening interests is determined as of the time of the transaction supporting subrogation. The consequences of subsequent transactions or events are not relevant to this inquiry.
>
> In many cases, subrogation changes *only* the intervening lienholder's identity. This change creates no prejudice, so subrogating the intervening lienholder is appropriate as a matter of law. Indeed, one court has stated that there is no prejudice to intervening interest holders absent a showing that subrogation results in additional debt having priority over or parity with the intervening interest, a material change in the terms of the superior interest, or other pecuniary loss resulting from the subrogation.

*Id.* (internal citations & quotations omitted).

At trial, DRS had the burden of proving that it was entitled to subrogation. *See Bank of Am. v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011, pet. denied) ("The burden is on the party claiming equitable subrogation to establish that he is entitled to it." (citing *Murray v. Cadle Co.*, 257 S.W.3d 291, 300 (Tex. App.—Dallas 2008, pet. denied); *Monk v. Dallas Brake & Clutch Serv. Co., Inc.*, 697 S.W.2d 780, 782 (Tex. App.—Dallas 1985, writ ref'd n.r.e.))). Ostensibly, DRS had to prove that subrogation would not prejudice FNB and that the equities in this case favored subrogation.

In its findings of fact 31 and 32, the trial court stated the following:

31. If DRS were subrogated to the Bank's first lien position under the 1991 Deed of Trust, the Bank would have been prejudiced as of March 30, 2012. That prejudice would include: (a) pecuniary loss as a result of Nix' involvement in, direction to, encouragement of, and advice to the Mills in their efforts to hinder the Bank's collection of amounts due under the 2008 Note; (b) the Bank's 2008 Lien being subordinate to more debt than it was prior to the time DRS paid the 1991 Loan; and (c) a material change in the terms of the debt secured by a lien superior to the 2008 Note.

32. Considering the totality of the circumstances, the equities do not support a finding that DRS should be subrogated to the Bank's rights under the 1991 Deed of Trust.

The record reflects that, prior to DRS's paying of the 1991 loan balance, FNB held both the 1991 and 2008 liens on the property, and the value of the property was more than enough to satisfy the debt secured by both liens. The record also indicates that the 2008 loan was non-recourse, meaning that FNB could only look to the property to satisfy the loan. The Mills's and Nix's efforts delayed FNB's foreclosure for more than two years, which resulted in the accrual of approximately $129,000 in attorney's fees for FNB. Furthermore, if the trial court had concluded that the 2008 lien was subordinate to DRS's lien, FNB would have had a significant, uncollectable deficiency balance on the 2008 loan.[5] Moreover, subrogation would have resulted in FNB's 2008 lien being subject to DRS's loan of approximately $130,000, thereby resulting in a potential pecuniary loss for FNB. Accordingly, we conclude that DRS failed to proffer sufficient evidence to demonstrate that FNB would not have been prejudiced by subrogation.

---

[5] Though not central to the prejudice analysis, the May 2014 foreclosure resulted in a deficiency for FNB.

Despite this, Texas courts have stated that "the mere presence of prejudice does not necessarily prevent subrogation." *Lyda Swinerton Builders, Inc.*, 409 S.W.3d at 248 (citing *Fleetwood v. Med. Ctr. Bank*, 786 S.W.2d 550, 555 n.2 (Tex. App.—Austin 1990, writ denied). "Rather, 'when prejudice exists, the trial court should, in exercising its equitable discretion, consider the totality of the circumstances, of which the existence of prejudice to one or more parties is part.'" *Id.* (quoting *Fleetwood*, 786 S.W.2d at 555 n.2). "Factors to consider include the extent of prejudice, its foreseeability, and whether the party claiming prejudice could have avoided it." *Id.* (citing *Fleetwood*, 786 S.W.2d at 555 n.2).

As mentioned earlier, the record reflects that subrogation would have resulted in a substantial deficiency balance on the non-recourse 2008 loan, whereas prior to the involvement of Nix, FNB was over-secured. Also, the testimony shows that Nix and the Mills undertook numerous actions, including the filing of a frivolous bankruptcy petition, that were designed to forestall FNB's foreclosure attempts for two years. Indeed, the evidence adduced at trial indicated that Nix's plan was designed to force FNB to waive more than 50% of the amount owed by the Mills. And finally, there is no evidence in the record demonstrating that FNB could have avoided the prejudice. FNB actively sought to enforce its foreclosure rights, and it cannot be said that FNB was required to avoid the prejudice by agreeing to a significant loan reduction. Ultimately, we cannot say that the trial court erred in determining that the equities fail to support a finding that DRS should be subrogated to FNB's rights under the 1991 Deed of Trust.

Therefore, irrespective of DRS's failure to properly challenge the trial court's findings of fact, we conclude that the trial court's judgment is supported by legally- and

factually-sufficient evidence. And as such, we cannot say that the trial court erred in concluding that subrogation would have greatly prejudiced FNB and that the equities do not weigh in favor of subrogation. We overrule DRS's issues on appeal.

## IV. CONCLUSION

Having overruled all of DRS's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed July 2, 2015
[CV06]

