**Richard K. REEDER, Appellant,**

v.

**Gregory ALLPORT and Deborah Kay Allport, Individually and as next Friends of Janna Kay Allport and Derrick Gregory Allport, Appellees.**

No. 09–05–525–CV.

Court of Appeals of Texas, Beaumont.

Submitted Nov. 2, 2006.

Decided March 8, 2007.

 

Gerald R. Flatten, Rienstra, Dowell & Flatten, Beaumont, for appellant.

David E. Bernsen, Jessica Depew, Brian Mazzola, Law Office of David E. Bernsen, P.C., Beaumont, for appellees.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

STEVE McKEITHEN, Chief Justice.

The wife and children of Gregory Allport recovered damages for past and future loss of consortium arising from the accidental shooting of Gregory Allport by Richard K. Reeder. On appeal, Reeder challenges the factual sufficiency of the evidence supporting the jury's verdict and contends the jury awarded excessive amounts for these categories of damages. We hold the jury's findings are supported by factually sufficient evidence and the awards are not excessive. Consequently, we affirm the judgment.

Texas law recognizes causes of action for the loss of spousal and parental consortium. *Reagan v. Vaughn,* 804 S.W.2d 463, 466 (Tex.1990); *Whittlesey v. Miller,* 572 S.W.2d 665, 666 (Tex.1978). Spousal consortium "primarily consists of the emotional or intangible elements of the marital relationship." *Whittlesey,* 572 S.W.2d at 666. A spouse may recover for the loss of the injured spouse's affection, solace, comfort, companionship, society, assistance, and sexual relations necessary to a successful marriage. Id. at 666. A child may recover for loss of consortium when a parent suffers serious, permanent, and disabling injuries. *Reagan,* 804 S.W.2d at 468. Factors considered in determining the amount of nonpecuniary damages for loss of the parent's love, affection, protection, emotional support, services, companionship, care, and society include "the severity of the injury to the parent and its actual effect upon the parent-child relationship, the child's age, the nature of the child's relationship with the parent, the child's emotional and physical characteristics, and whether other consortium giving relationships are available to the child." Id. at 467. Loss of consortium does not include an element of mental anguish. Id. Loss of consortium concerns "subjective states which present some difficulty in translating the loss into a dollar amount." *Whittlesey,* 572 S.W.2d at 667. The difficulty in quantifying the emotional and intangible elements of non-economic damages does not insulate the verdict from appellate review. Complaints of excessive damages are subject to a factual sufficiency standard of review. See *Maritime Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406 (Tex.1998); *Pope v. Moore,* 711 S.W.2d 622, 624 (Tex.1986) (standard for remittitur of consortium and other damages). We consider and weigh all of the evidence, and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Ellis,* 971 S.W.2d at 406–07.

On October 17, 2003, Richard Reeder shot Gregory Allport in the neck. Gregory survived, spent twenty days in the hospital, spent another forty-two days in a Houston rehabilitation facility, and spent two and a half weeks in a Beaumont rehabilitation facility. As a result of permanent paralysis, Gregory is confined to a wheelchair. Nineteen months elapsed be-

tween the incident and the trial. Gregory and Deborah Allport had been married 23 years at the time of the trial. The jury awarded Deborah $76,000 for past loss of consortium and $1,000,000 for future loss of consortium. The Allports' daughter Janna was seventeen at the time of the incident and nineteen at the time of trial. The jury awarded Janna $100,000 for loss of consortium in the past and $25,000 for loss of consortium in the future. The Allports' son Derrick was in the ninth grade when his father was shot. The jury awarded Derrick $100,000 for loss of consortium in the past and $75,000 for loss of consortium in the future. Reeder challenges the jury's verdict on past loss of consortium for the children and both past and future loss of consortium for Deborah. Other damages found by the jury but not challenged on appeal include the following: $47,101 for past lost earning capacity; $476,000 for future lost earning capacity; $50,000 for past pain and mental anguish; $800,000 for future pain and mental anguish; $100,000 for past disfigurement; $250,000 for future disfigurement; $100,000 for past physical impairment; $150,000 for future physical impairment; $245,000 for past medical care; $100,000 for future medical care; $100,000 for cost of vehicles; $30,000 for cost of wheelchairs; $10,000 for accessibility repairs to the home; $4,400 for past loss of household services; $60,000 for future loss of household services; and punitive damages in the amount of $1,000,000.

Reeder concedes that Gregory Allport suffered a severe and disabling injury. The consortium damages awarded by the jury are excessive, he argues, because as a result of the accident, Gregory Allport's relationship with the other members of his family were strengthened, not destroyed. Reeder argues that, unlike cases in which the injured spouse or parent dies or suffers a brain injury that prevents meaningful interplay with the members of the family, Allport still occupies his place as husband and father, and provides the affection and companionship compensated by awards for loss of consortium. Certainly, the Allports' testimony reveals the blessings of a strong marriage and devoted children. Although his wife and each of his children admitted that positive benefits still flow from their relationships with him, Gregory Allport's devastating physical injuries profoundly altered those relationships.

After the shooting, Gregory was physically unavailable to the family for nine weeks. Janna Allport testified that Deborah took up the burden of being available for the family while Gregory recuperated. During that time, Gregory and Deborah learned how to catheterize Gregory every four hours and to manually stimulate his bowels to induce defecation. They also learned how to properly treat his skin to prevent ulcers, how to bathe, and how to transfer Gregory into a wheelchair. In the months following the accident, Deborah had to bathe and dress Gregory because he was confined to a bed and could not perform those basic functions for himself. For a time, Gregory was depressed because he had not yet accepted that he was paralyzed. According to Gregory, adapting the daily lives of the members of the family to accommodate his disability was at times very stressful and irritating.

While Gregory recuperated in Houston, the children could only see him on weekends. Janna was a varsity cheerleader and did not get to see him much because her school's football team was in the playoffs. Because of the accident and subsequent rehabilitation, Gregory was not present when Janna was named the football sweetheart on senior night and he did not attend her high school graduation ceremony. According to Deborah, Janna had

trouble coping with her father's condition. She was rarely at home or would leave the room when Gregory struggled to turn over. Derrick Allport became withdrawn and reacted to the stress of his father's injury and hospitalization by sleepwalking. Both children reported having to help their father get into his wheelchair after falling. Derrick had to drag his nude father from the shower to the living room couch. Derrick feels that he has to help and protect his father. Janna agreed there was a role reversal with her father because of his difficulty performing basic tasks like cooking. Derrick reported that Gregory still helps him with his homework and that the family has grown closer since the shooting. Gregory will give Janna away at her June wedding and she still confides in her father. Gregory and his son cannot go camping or play football like they used to; now their activities together are limited to watching television.

Because the spinal cord injury left him without any feeling below the armpits, at age 48, Gregory can no longer engage in sexual intercourse with Deborah. Deborah must sleep on the couch because Gregory cannot roll over if she is in the bed with him. Although she loves her husband dearly, she described having "days that I don't want to wake up, and that I want to run out the door and hide because of the pressure and the loss of emotional contact with my husband, physical contact."

Reeder points out that Deborah, Janna, and Derrick have not lost Gregory's love and comfort. However, love and comfort are not the only manifestations of parental consortium. The children were teenagers when the shooting occurred. Gregory's injuries were severe and altered both the physical activities in which he can engage with his children and the way in which they now must perform simple tasks that consume everyday life. Only the $100,000 awards of past lost parental consortium are challenged on appeal. The children experienced a period of physical separation from their father, followed by a period of emotional turmoil until they settled into their new roles in the family. Although Reeder did not destroy the children's consortium-giving relationship with their father, the evidence of Janna's and Derrick's loss of consortium is not so weak or the evidence to the contrary so overwhelming as to make the jury's damages finding manifestly unjust, shocking to the conscience, or a clear demonstration of bias. We hold that factually sufficient evidence supports the findings for loss of parental consortium in the past, and that the jury's award for this element of damages is not excessive.

Similarly, the Allports' marriage endured through a grueling hospitalization and rehabilitation. Reeder does not direct our attention to any evidence that Gregory provided the comfort and companionship of a marriage partner to Deborah during that time. Reeder does point to several examples in the record where Deborah revealed that her husband currently provides limited companionship and comfort to her. For instance, when asked if Gregory has been supportive as she juggled jobs, teenagers, and his injuries, Deborah replied, "Of course. He tells me to sit down and take a rest and get off my feet. I need to eat. I'm not taking care of myself. Sit down, quit smoking, quit drinking coffee, eat. He's constantly telling me—trying to tell me to slow down and supporting me." The permanent loss of sexual relations and his shift from a role as helpmate to one as a dependent provides the jury with factually sufficient evidence of a loss of consortium in the future. We hold the jury's findings on past loss of spousal consortium and future loss of spousal consortium are supported by factually sufficient evidence

and that the amounts awarded by the jury on these elements of recovery are not excessive. We overrule all of the issues raised on appeal and affirm the judgment.

AFFIRMED.