**Selso "Sam" TELLO, Individually and as Representative of the Estate of Doris D. Tello, Deceased, and as Next Friend of Victoria Snyder–Hernandez, a Minor,[1] Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civil Action No. SA–07–CA–286–FB.**

United States District Court,
W.D. Texas,
San Antonio Division.

March 19, 2009.

---

1. A claim filed by Selso "Sam" Tello on behalf of Selso Joseph Tello, III, a minor, was

dismissed with prejudice pursuant to a Stipu-

Jeffrey Clarke Anderson, Jessica Leigh Lambert, Law Offices of Jeffrey C. Anderson, San Antonio, TX, for Plaintiffs.

James F. Gilligan, Assistant United States Attorney, San Antonio, TX, for Defendant.

### AMENDED ORDER REGARDING POST–JUDGMENT MOTIONS [2]

FRED BIERY, District Judge.

Before the Court are motions to alter or amend the Judgment (docket nos. 43 & 46)

lation of Dismissal (docket no. 18) filed by the parties on June 2, 2008.

2. See footnote 3 on page 2 and the penultimate statement prior to the discussion on Defendant's Motion to Alter or Amend Judgment on page 6.

filed by plaintiffs and defendant, along with the responses and replies of the parties. Plaintiffs' response (docket no. 47) to defendant's motion contains a motion to strike. (Docket no. 47). After careful consideration, the Court is of the opinion plaintiffs' motion should be denied and defendant's motion should be granted in part and denied in part. Specifically, defendant's motion should be granted to the extent defendant makes an unopposed request to amend the language regarding post-judgment interest, but denied in all other respects.

## PLAINTIFFS' MOTION TO ALTER OR AMEND THE JUDGMENT

On January 15, 2009, this Court entered an Order Following Bench Trial (docket no. 41) and a Judgment (docket no. 42) finding in favor of plaintiff's and against defendant in the amount of $313,390.91, together with taxable court costs and post-judgment interest of $0.44% as allowed under current federal law. In paragraph thirty-two (32) found on page twenty-one (21) of the Order Following Bench Trial (docket no. 42), the Court made the following conclusion of law:

> Under Texas law, the loss of a homemaker's services is included in the non-economic damages cap. *See Moore v. Lillebo,* 722 S.W.2d 683, 687–88 (Tex. 1987) (holding that positive benefits flowing from love, comfort, companionship and society which plaintiffs would have experienced if decedent had lived compensate non-economic losses); *Reeder v. Allport,* 218 S.W.3d 817, 819–20 (Tex.App.–Beaumont 2007, no writ) (holding that loss of spousal and parental services constitutes non-economic damages). Although plaintiffs argue the damages they seek for the loss of the

services of Doris Tello as a wife and mother are pecuniary, and therefore fall outside the $250,000 cap, the case law does not support this argument.

In paragraph thirty-five (35) found on page twenty-one (21) of the Order Following Bench Trial (docket no. 42), the Court made the following conclusion of law:

> The Court further finds that, in the absence of the $250,000 cap, the total damages including economic and non-economic damages in this case would entitle plaintiffs to recover$1,769,500, together with taxable Court costs and post-judgment interest as allowed for under current federal law.

In their motion, plaintiffs contend this Court erred in finding that the $250,000 statutory damages cap applies to the loss of services of their wife and mother, Doris Tello. Plaintiffs imply the damages they seek as a result of the death of Mrs. Tello are separate and apart from outward manifestations of love and affection customarily described as loss of society and companionship in Texas cases. Rather, plaintiffs imply the aspect of damages they seek is the loss of Mrs. Tello's services aside from love and affection, i.e., cooking, cleaning, laundering, child care, etc. They argue there is precedent in Texas for finding that a homemaker's loss of services is pecuniary or economic in nature. Plaintiffs cite *Moore,* 722 S.W.2d at 687,[3] and the Texas Pattern Jury Charge 81.3. In each instance, *"pecuniary loss"* was defined as the loss of the care, maintenance, support, *services,* advice, counsel and reasonable contributions of a *pecuniary value* which the plaintiffs would, in reasonable probability, have received from the decedent had she lived. (Emphasis added). Plaintiffs also cite section 41.001(4) of the Texas Civil Practice and Remedies Code which

---

**3.** *Moore* was not a medical malpractice case. It predated the Texas Legislature's passage of the medical malpractice caps, TEX. CIV. PRAC & REM.CODE ANN. § 41.001 (Vernon 2006), which does not apply to other tort cases.

provides that *"[e]conomic damages"* means "compensatory damages intended to compensate a claimant for *actual economic or pecuniary loss:* the term does not include exemplary damages or noneconomic damages." (Emphasis added). Plaintiffs imply, because the loss of services is a pecuniary loss, and because a pecuniary loss is an economic damage, plaintiffs' claim for the loss of Mrs. Tello's household services is necessarily pecuniary or economic in nature. Plaintiffs therefore contend the $250,000 cap does not apply. Plaintiffs also argue *Reeder,* 218 S.W.3d at 820, supports their position because other damages found by the jury, but not challenged on appeal, included $4,400 for past loss of household services and $60,000 for the future loss of household services. Defendant responds the damages in this case cannot be pecuniary because there is no evidence plaintiffs have actually incurred any expense to replace the loss of services they seek. Based on the current statutory scheme in place in Texas, the Court agrees with defendant.

In the context of medical malpractice, a successful plaintiff in Texas is entitled to recover "compensatory damages" consisting of both "noneconomic damages" and "economic damages." Tex. Civ. Prac. & Rem.Code Ann. § 41.001(8) (Vernon 2006). "Noneconomic damages" are defined as:

[D]amages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages.

*Id.* at § 41.001(12). Thus, nonpecuniary loss, variously described as loss of love,

affection, companionship, care, attention, nurture, guidance, society, consortium and like terms, is recoverable. *Id.*

Additionally, the loss of support by a husband-father or a wife-mother, a pecuniary loss often times but not always categorized separately from non-pecuniary loss, is recoverable. *Reagan v. Vaughn,* 804 S.W.2d 463, 473–74 (Tex. 1990) (discussing common law and statutory development of Texas law recognizing right of action to recover for loss of services resulting from injury to familial relationship). Prior to September 1, 2003, "economic damages" in the medical malpractice context meant "compensatory damages for pecuniary loss, the term does not include exemplary damages or damages for physical pain and mental anguish, loss of consortium, disfigurement, physical impairment, or loss of companionship and society." *See* Tex. Civ. Prac. & Rem.Code Ann. § 41.001, Historical and Statutory Notes. In September of 2003, a change was made limiting economic/pecuniary damage recovery to "actual" losses. *Id.* § 41.001(4). The Texas Legislature specifically revised 41.001(4) by removing the words "compensatory damages for pecuniary loss" and substituting the words "compensatory damages *intended to compensate a claimant for actual economic or pecuniary loss.*" *Id.* (emphasis added). Thus, as noted by plaintiffs, the statute now reads: " 'Economic damages' means compensatory damages intended to compensate a claimant for *actual* economic or pecuniary loss; the term does not include exemplary damages." *Id.* § 41.001(4) (emphasis added).

Although the Texas statutes do not define what constitutes an "actual economic or pecuniary loss," the Mississippi medical malpractice statute provides guidance.[4]

---

4. As in Texas, a successful plaintiff in a Mississippi medical malpractice action is entitled

to recover "non-economic damages" and "ac-

Relevant to this case, "actual economic damages" include "objectively verifiable pecuniary damages arising from ... costs of obtaining substitute domestic services." MISS.CODE ANN. § 11–1–60(b).[5]

█ This interpretation finds support in the legislative history of the Texas statute governing economic damages relevant to recovery for medical care. Prior to 2003 tort reform measures, a plaintiff in Texas needed only prove "the reasonable and customary" charges for medical services to recover for the same. *See e.g., Jackson v. Gutierrez,* 77 S.W.3d 898, 902 (Tex.App.–Houston [14th Dist.] 2002, no pet.); *Rosenboom Mach. & Tool, Inc. v. Machala,* 995 S.W.2d 817, 824 (Tex.App.–Houston [1st Dist.] 1999. pet. denied); *Lancer Corp. v. Murillo,* 909 S.W.2d 122, 129 (Tex.App.–San Antnnin 1995, no writ). After the applicable changes, however, the law limited a plaintiff's recovery to those expenses "*actually paid or incurred*" by the plaintiff. TEX. CIV. PRAC. & REM.CODE ANN. § 41.0105 (emphasis added). Applying this analysis to the present facts, it is reasonable to conclude that under the current Texas statutory scheme there must be evidence of actual payment for the replaced household services for the recovery to be pecuniary or economic in nature.

█ The Court does not determine that the loss of Mrs. Tello's homemaker services such as cooking, cleaning, child care, and the like, is not a very real loss and a significant part of the damages which plaintiffs sustained. Certainly, the services performed by Mrs. Tello were manifestations of love and affection and the loss of theses services is a consideration in determining damages in this wrongful death case. However, there is no evidence the loss of these services necessarily resulted in direct financial loss to the survivors, and so in this respect it is not a pecuniary loss. Accordingly, plaintiffs' recovery attaches to the non-economic loss of companionship and society inherent in her relationship with her family. The $250,000 statutory cap on damages therefore applies. Although this Court believes plaintiffs should recover $1,769,500, the Texas Legislature or the Texas appellate courts are the institutions which can change or interpret the medical malpractice statute to plaintiffs' liking. Plaintiffs' motion to alter or amend the Judgment is denied.

## DEFENDANT'S MOTION TO ALTER OR AMEND THE JUDGMENT

█ Plaintiffs move to strike defendant's motion to alter or amend arguing it was not timely filed. Not counting weekends and the Martin Luther King holiday, defendant's motion was filed within ten days of the date the Court entered its Judgment on January 15, 2009. *See* FED. R.CIV.P. 59(e) (providing for a ten-day period of time to file motion to alter or amend judgment); FED. R. CIV. P. (A)(4)(A)

---

tual economic damages." Similar to the Texas statute, "noneconomic damages" are defined as "subjective, nonpecuniary damages arising from death, pain, suffering, inconvenience, mental anguish, worry, emotional distress, loss of society and companionship, loss of consortium, bystander injury, physical impairment, disfigurement, injury to reputation, humiliation, embarrassment, loss of enjoyment of life, hedonic damages, and other non pecuniary damages, and any other theory of damages such as fear of loss, illness or injury." MISS.CODE ANN. § 11–1–60(a).

5. The entire statute provides that "actual economic damages" means "objectively verifiable pecuniary damages arising from medical expenses and medical care, rehabilitation services, custodial care, disabilities, loss of earnings and earning capacity, loss of income, burial costs, loss of use of property, costs of repair or replacement of property, costs of obtaining substitute domestic services, loss of employment, loss of business or employment opportunities, and other objectively verifiable monetary losses." MISS.CODE. ANN. § 11–1–60(b).

(providing that weekends and holidays are excluded when period of time is less than eleven days). Accordingly, the motion was timely filed. Plaintiffs' motion to strike (contained within docket no. 47) is denied.

The Court's Order Following Bench Trial (docket no. 41) and Judgment (docket no. 42) provide for plaintiffs to receive "post-judgment interest of 0.44% as allowed for under federal law." Defendant moves to have this language amended to read "... and post-judgment interest of 0.44% in accordance with 28 U.S.C. § 1961(b) and 31 U.S.C. § 1304(b)." Plaintiff's response contains no objection to this modification. After careful consideration, the Court is of the opinion the post-judgment interest language should be so amended. To this extent, defendant's motion to alter or amend the Judgment is granted.

■ Defendant also argues "[t]he Court erred in determining that Mr. Tello's statements and testimony, formed after the submission of the plaintiffs' FTCA claims, were entitled to greater credibility than contemporaneously created written business and medical records and in not explaining why the delay for over an hour when she woke up with trouble breathing was not a supervening and intervening act." The Court has reviewed the record and concludes the findings of fact and conclusions of law supporting the Court's Judgment are supported by a preponderance of the evidence and are not otherwise clearly erroneous. *See In re Benjamin Moore & Co.*, 318 F.3d 626, 629 (5th Cir. 2002) (noting that motion to alter or amend judgment may be granted to correct clear error of law or prevent manifest injustice). This is especially true in light of the testimony by defendant's expert witness, Colonel Curtis Hunter, M.D., regarding violations of the standard of care. Colonel Hunter was the acting Chief of the Emergency Department at the time of the incident in question. He testified in his deposition that, if Lieutenant Colonel Tello had been instructed by the emergency room respondent who answered his call that he could bring his wife to the emergency room "if he felt it was necessary," this instruction fell below the standard of care for an emergency room healthcare provider. *Order Following Bench Trial*, Finding of Fact No. 121. Specifically, during the deposition, the following exchange occurred:

> *Question:* An if somebody gives a history of having trouble breathing, that's something that can kill a person very quickly? *Answer:* Yes. *Question:* And, that's why, in your opinion, that if someone says that "I have trouble breathing," they should be told "get to the emergency room as soon as possible." Would you—*Answer:* Yes. *Question:* Agree with that? And if they're told anything other than that, either in discharge instructions or by somebody answering the telephone call, that would be below the standard of emergency medical care? *Answer:* That's hard. I'll say yes.

On cross examination, Dr. Daniel J. Ratcliff, M.D., plaintiffs' expert, stated that he agreed with Colonel Hunter's deposition testimony regarding the standard of care and also deferred to his opinion. *Id.* at Finding of Fact No. 113. Colonel Hunter also testified in his deposition that, if a patient experiences trouble breathing after being discharged from the hospital, the discharge instructions or telephone advice to this patient must be to "get to the emergency room as soon as possible." Any other instruction fell below the standard of care. *Id.* at Finding of Fact No. 122. The following exchange took place:

> *Question:* If what is communicated over a telephone to an emergency department personnel is that the person is

having trouble breathing, is there a duty for that person to tell the person to immediately come to the emergency room? *Answer:* I think there is, yes. Yes.

Dr. Ratcliff again agreed with Colonel Curtis Hunter's expert testimony and deferred to his expertise. *Id.* at Finding of Fact No. 114. Colonel Hunter further testified at this deposition that, if what is communicated over the telephone to an emergency department personnel is that the person is having trouble breathing, there is a duty for this person to tell the caller to come to the emergency room immediately. *Id.* at Finding of Fact No. 123. In this regard, defendant's motion is denied.

IT IS THEREFORE ORDERED that Plaintiffs' Motion to Alter or Amend Judgment (docket no. 43) and motion to strike (contained within plaintiffs' response to defendant's motion to alter or amend, docket no. 47) are DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Alter or Amend Judgment (docket no. 46) is GRANTED to the extent that the Court's Order Following Bench Trial (docket no. 41) and Judgment (docket no. 42) are AMENDED to read: "... and post-judgment interest of 0.44% in accordance with 28 U.S.C. § 1961(b) and 31 U.S.C. § 1304(b)." In all other respects, the motion is DENIED.

It is so ORDERED.